UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Charles Mosely | § | |
| v. | § | 4:21-cv-396 |
| NewRez LLC | § | |

**DEFENDANT SHELLPOINT'S SUPPLEMENTAL BRIEF REGARDING THE AMOUNT IN CONTROVERSY**

The aim of Mr. Mosely's suit is to prevent foreclosure. His amended complaint makes it even more plain he is challenging Shellpoint's right to foreclose on the house. Shellpoint contends the amount in controversy is met in this case.

## FACTUAL BACKGROUND

On October 3, 2008, Mr. Mosely bought 3005 Nita Street in Houston by borrowing $34,400 secured with a lien. App. at 1-21, deed of trust at 2 (principal balance), 3 (address), 15-16 (power of sale), 17 (purchase money); app. at 22-24, note; *see also* doc. 1-2 at 3, pet. ¶ 7.

Shellpoint removed February 5 and moved to dismiss March 3. (Docs. 1 & 7.) On March 30 Mr. Mosely asked for leave to amend. (Doc. 9.) The court granted the request and directed Shellpoint to "file a new motion [to dismiss] after Plaintiff files his amended complaint." (Doc. 10.) Mr. Mosely filed his "plaintiff's first amended motion" (the **amended complaint**) April 9. (Doc. 11.) Shellpoint moved to dismiss the amended complaint on April 20. (Doc. 12.) Seven months later, Mr. Mosely moved the court to strike the documents attached to Shellpoint's notice of removal. (Doc. 19.) The court denied Shellpoint's motion to dismiss without prejudice and Mr. Mosely's motion to strike requesting supplemental briefing regarding the amount in controversy. (Doc. 20.)

## ARGUMENTS & AUTHORITIES

**The legal standard for this brief.**

Proper removal involves threshold jurisdictional requirements. Title 28 USC § 1332(a) confers jurisdiction to district courts over diversity suits where the amount in controversy exceeds $75,000.00. Generally, the removing party has the burden of proving that federal jurisdiction exists. *Grant v. Chevron Phillips Chem. Co. L.P.*, 309 F.3d 864, 868 (5th Cir. 2002).

In instances where a case has been removed and the plaintiff has failed to specify the amount in controversy, the Fifth Circuit has held that a removing party may establish jurisdiction by a preponderance of the evidence in either of two ways: (**1**) by demonstrating that it is "facially apparent" from the petition that the claim likely exceeds $75,000.00; or (**2**) by setting forth facts that support the requisite finding. *Allen v. R.H. Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995). A district court must first examine the complaint to determine whether it is "facially apparent" the claims exceed the jurisdictional amount. *White v. FCI USA, Inc.*, 319 F.3d 672, 675 (5th Cir. 2003). If it is not facially apparent, the court may rely on "summary judgment-type" evidence to ascertain the amount in controversy. *Id*. The Fifth Circuit has held that "once a defendant is able to show that the amount in controversy exceeds the jurisdictional amount, removal is proper, provided plaintiff has not shown that it is legally certain that his recovery will not exceed the amount stated in the state complaint." *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995).

**(1)   Whether Plaintiff did, in fact, seek injunctive or declaratory relief to prevent foreclosure of the property in his original complaint;**

In its order the Court concedes Mr. Mosely is seeking injunctive and declaratory relief but noted in a footnote, "it is not necessarily clear that the property is the object of the litigation, given the allegations . . . do not mention foreclosure." (Doc. 20 at 5 n.5.) Mr. Mosely describes the foreclosure as the issue most bluntly in his affidavit in support of his original petition, "Defendant

sought to sell my property at a foreclosure sale." (Doc. 1-2 at 8.) Mr. Mosely alleged in the petition, "Shellpoint Mortgage Servicing began proceeding against the plaintiff as though he was, in fact default. In so proceeding, Shellpoint Mortgage Servicing, pursued a course which was ill-conceived, improperly carried out and simply a wrongful perversion of conduct, Shellpoint should have corrected the errors that existed with respect to Plaintiff." (*See* pet. ¶ 12-13 (all *sic*).) As part of his negligent misrepresentation claim, Mr. Mosely alleges Shellpoint "actively concealed from the plaintiff their intent to pursue a foreclosure proceeding, regardless of whether the act was truly justified." (*Id*. at ¶ 17.) By these allegations Mr. Mosely makes clear Shellpoint is foreclosing the lien—that is, "proceeding . . . as though he was, in fact [in] default"—and to quote his affidavit, "sought to sell my property at a foreclosure sale."

"[W]hen the validity of a contract or a right to property is called into question in its entirety, the value of the property controls the amount in controversy." *Nationstar Mortg. LLC v. Knox*, 351 F. App'x 844, 848 (5th Cir. 2009) (quoting *Waller v. Prof'l Ins. Corp.*, 296 F.2d 545, 547–48 (5th Cir. 1961)). Shellpoint "proceeding against [Mr. Mosely] as though he was, in fact [in] default" (pet. ¶ 12), reflects Shellpoint pursuing its foreclosure remedies under the deed of trust making the entire property the object of the litigation. *Berry v. Chase Home Fin., LLC*, No. C–09–116, 2009 WL 2868224, at *3 (S.D. Tex. Aug. 27, 2009) (holding because "[a]bsent judicial relief, Plaintiff could be divested of all right, title, and interest to the Property," "the value of the declaratory and injunctive relief to Plaintiff" was "the current appraised fair market value of the Property".))

Mr. Mosely asserts Shellpoint negligently misrepresented the default status of the loan, so his injury, if any, is dictated by the terms of the loan documents. *See, e.g.*, *Lara v. Wells Fargo Bank, N.A.*, No. 3:13-cv-1686-B, 2013 WL 6242703, at *6 (N.D. Tex. Dec. 2, 2013) ("Plaintiffs' fraud claim flows directly from the Note and Security Instrument because, absent the original

agreements, any discussion of modification would not have existed. Further, the injuries Plaintiffs allege—loss of equity in the home and loss of insurance proceeds—also flow from the contracts." (citation omitted)). Default necessarily precedes foreclosure and by so conceding the issue Mr. Mosely by extension concedes if he does not prevail in this litigation then the property will be sold at a non-judicial foreclosure sale and any title he possesses will transfer to the purchaser. The entire property is the object of the litigation—its value should control.

**(2) If Plaintiff did seek such relief in his original complaint, and if the value of the property is based on the Harris County appraisal of $72,886, how the damages for negligent misrepresentation would cause the amount in controversy to exceed $75,000;**

Mr. Mosely's state court petition does not specify an exact amount of damages sought, so the amount in controversy is not "facially apparent" from his petition. *See* Tex. R. Civ. P. 47(c). To establish the value of Mr. Mosely's home exceeds $75,000, Shellpoint submitted four documents: (**1**) Zillow's $132,890 valuation (doc. 1-7, ex. 1-A); (**2**) Redfin's $97,185 valuation (doc. 1-7, ex. 2-B), (**3**) Realtor.com's $100,000 valuation (doc. 1-7, ex. 3-C), and (**4**) Harris County appraisal district's $72,886 valuation (doc. 1-7, ex. 4-D). "Evidence of price paid, nearby sales, tax valuations, appraisals, online resources, and any other relevant factors may be offered to support" a property valuation. *Munguia v. PennyMac Loan Servs., LLC*, No. 7:20-CV-00070, 2020 WL 4934593, at *7 (S.D. Tex. Aug. 24, 2020) (quoting *Nat. Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 159 (Tex. 2012)). District courts have routinely relied on such evidence to establish the amount in controversy. *See*, *e.g.*, *Hearn v. Deutsche Bank Nat'l. Trust Co.*, 2013 WL 6079460, at *4 (N.D.Tex. Nov.18, 2013) (collecting cases holding appraisal valuations as competent evidence to establish the amount in controversy). These appraisals combined with the available online resources provide the court with enough information from which it can determine whether "it is more likely than not that the amount of the claim will exceed [the jurisdictional amount.]" *Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1336 (5th Cir. 1995).

Under Texas law, "'damages recoverable for a negligent misrepresentation are those necessary to compensate the plaintiff for the pecuniary loss to him of which the misrepresentation is a legal cause, including (**a**) the difference between the value of what he has received in the transaction and its purchase price or other value given for it; and (**b**) pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation.'" *CCE, Inc. v. PBS & J Const. Servs., Inc.*, 461 S.W.3d 542 (Tex. App. 2011) (quoting *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)). Since origination Mr. Mosely has delayed creditors with six bankruptcy petitions. Mr. Mosely filed this suit January 20, 2021, the day after the bankruptcy court signed the final decree dismissing his most recent bankruptcy petition. Given that these alleged misrepresentations have persisted for several years, the only reasonable conclusion is Mr. Mosely seeks damages above the $75,000 threshold.

**(3)** **If Plaintiff did not seek such relief in his original complaint, how the amount in controversy should be measured;**

Shellpoint respectfully submits the combination of (**1**) the Court's concession Mr. Mosely "seeks declaratory and injunctive relief" as well as (**2**) Mr. Mosely's explicit allegations Shellpoint considers him "in default" and "sought to sell my property at a foreclosure sale," renders this question moot. If the Court disagrees, Shellpoint respectfully requests Mr. Mosely comply in this Court with Texas Rule 47(c) given his suit arose in state court by specifying the threshold of damages he seeks under that Rule. *See also* Tex. R. Civ. P. 47(d) ("upon special exception the court shall require the pleader to amend so as to specify the maximum amount claimed.").

**(4)** **Whether the amended complaint is relevant to the jurisdiction analysis, given the general rule that courts should look to facts as they existed at the time of removal;**

Courts "ordinarily consult the state court petition to determine the amount in controversy." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). Shellpoint does not contend the amended complaint is relevant to the jurisdictional analysis the court is

Defendant Shellpoint's supplemental brief
4:21-cv-396; *Mosely v. NewRez LLC*
Page 5 of 7

undertaking, but instead believes the amended complaint elucidates the true object of the litigation and the desired relief Mr. Mosely seeks. The actual purpose of Mr. Mosely's suit, is succinctly stated in his amended complaint: "[at] trial or hearing on the merits, plaintiff requests a permanent injunction preventing interference the contract," when the only contractual relationship alleged between the parties pertains to his debt secured by the property. (Doc. 11.) Just as he did in 2017 when he pursued the same cause of action against Shellpoint, PennyMac Loan Service, and Wells Fargo Bank, N.A in case styled *Charles Mosely v. Shellpoint Mortgage Servicing, et al.*, cause no. 2016-88212 in Harris County 125th Judicial District Court.

**(5)   If the amended complaint is relevant to the jurisdiction analysis, how the amount in controversy should be measured.**

The amended complaint reflects the true object of the litigation and the desired relief Mr. Mosely seeks which is to limit Shellpoint's ability to pursue its rights under the security instrument, including foreclosing its lien following Mr. Mosely's default. Therefore the value of the property as set out at the time of removal, reasonably supplemented by the damages for the negligent misrepresentation claim, should be the amount in controversy.

## PRAYER

Shellpoint believes the amount in controversy is satisfied and Mr. Mosely cannot show to a legal certainty his recovery will not exceed $75,000.

Date: January 14, 2022                                     Respectfully submitted,

                *s/ Walter McInnis*
C. Charles Townsend, SBN: 24028053
So. Dist. Bar No. 1018722
charles.townsend@akerman.com
Walter McInnis, SBN: 24046394
So. Dist. Bar No. 588724
  --Attorney in charge
walter.mcinnis@akerman.com
AKERMAN LLP
2001 Ross Ave., Ste. 3600
Dallas, Texas 75201
Telephone: 214.720.4300
Facsimile: 214.981.9339
charles.townsend@akerman.com
walter.mcinnis@akerman.com

**ATTORNEYS FOR SHELLPOINT**

**CERTIFICATE OF SERVICE**

I certify I served this document on January 14, 2022 as follows:

**VIA CERTIFIED MAIL AND**
**CERTIFIED MAIL / RRR**
**9414-7266-9904-2192-8802-43**
**9414-7266-9904-2192-8802-50**

Charles Mosely, pro se
3005 Nita Street
Houston, Texas 77051
Telephone: 830.522.5836

                *s/ Walter McInnis*
Walter McInnis