IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
SOUTHERN DIVISION

United States Courts
Southern District of Texas
F I L E D

FEB 0 1 2022

Nathan Ochsner, Clerk of Court

| | | |
|---|---|---|
| CHARLES MOSELY, | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. 4:21-cv-00396** |
| | § | **Jury Demanded** |
| NEWREZ  MORTGAGE  LLC  D/B/A | § | |
| SHELLPOINT        MORTGAGE | § | |
| SERVICING, | § | |
| **Defendant.** | § | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO REMAND

Plaintiff files this motion to remand under 28 U.S.C.§ 1447(c)

## A. INTRODUCTION

1. Plaintiff is Charles Mosely; defendant is New Rez Mortgage LLC D/B/A Shellpoint Mortgage Servicing. 2. On January 20, 2021, plaintiff sued defendant for Negligence Misrepresentation in the District Court of  Houston  Harris County, Texas

3. Defendant New Rez Mortgage LLC D/B/A, Shellpoint Mortgage Servicing was served with notice of on suit January 22, 2021.

4. Defendant filed his notice of removal on February 25, 2021.

## B. ARGUMENT

5. A court must strictly construe the removal statutes in favor of remand and against removal. *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009); *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996).

6. A court may remand a case at any time on the basis of a lack of subject-matter jurisdiction identified in a lack of subject-matter jurisdiction identified in a motion for remand.

7. The Court should remand this case to state court because the amount does not exceed $75.000, excluding interest and cost. 28 U.S.C.§ 1332(A); Freeland v. Liberty Mut. Fire No., 632 F.3d. 250-53 (6th Cir. 2011; Darden v. Ford Consumer Fin. Co. 200 f. 3d 753, 755-756 (11th cir. 2000). The amount in controversy is $72.886.00. Defendant allege the amount in controversy should by measured by the property's value. (Dkt. No. 19.) Defendant attached a declaration with various valuations of the property that exceed $75.000 from Zillow, Realtor.com and Redfin---but also recognized that Harris County Appraisal District valued the property at 72,886. (Id. at 3; Dkt. No. 1-7.) Plaintiff objects to the admissibility of the evidence. (Dkt. No. 19.) However, Plaintiff objects to the Harris County Appraisal District valued the property at 72,886. The appraisal is for the year of 2020. On January 20, 2021 Plaintiff filed Original Petition in Harris County 215 th Judicial District Court alleging Negligence Misrepresentation. On February 5, 2021 Defendant NewRez Mortgage LLC d/b/c Shellpoint Mortgage Servicing filed Defendant Shellpoint Removal Notice. Tex. Tax Code § 23.01- Appraisals Generally (a) Except as otherwise provided by this chapter, all taxable property is appraised at its market value as of January 1. The appropriate appraisal year is January 2021, Defendant misrepresented the appraisal year. "In actions seeking declaratory or injunctive relief the amount in controversy is measure by the value of the object of litigation. *Campbell, v. Nationstar Mortgage, LLC No. CV* 14-3713-RGK (PJWx) U.S. C.D. Ca. June 26, 2014.

The amount in controversy does not exceed $75,000, excluding interest and costs. 28 U.S.C. § 1332(a); *Freeland v. Liberty Mut. Fire Ins. Co.*, 632 F.3d 250, 252–53 (6th Cir. 2011); *Darden v. Ford Consumer Fin. Co.*, 200 F.3d 753, 755–56 (11th Cir. 2000). Harris County Appraisal District valued the property at $30,250 for year of 2021. See: Exhibit."1"

Plaintiff can prove that he would not be able to recover more than the jurisdictional amount of $75,000, excluding interest and costs. *See Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87–88 (2014); *McPhail v. Deere & Co.*, 529 F.3d 947, 955 (10th Cir. 2008). See Exhibits "2" and "3".

8. The Court should award plaintiff costs, expenses, and attorney fees because defendant's removal of this case was not objectively reasonable. *Jackson Cnty. Bank v. DuSablon*, 915 F.3d 422, 424–25 (7th Cir. 2019); *GranCare, LLC v. Thrower*, 889 F.3d 543, 552 (9th Cir. 2018); *Am. Airlines, Inc. v. Sabre, Inc.*, 694 F.3d 539, 541–42 (5th Cir. 2012); *Porter Tr. v. Rural Water Sewer & Solid Waste Mgmt. Dist. No. 1*, 607 F.3d 1251, 1253 (10th Cir. 2010); *see* 28 U.S.C. § 1447(c).

**STATEMENT OF ISSUE TO BE DECIDED**

Whether Defendant has demonstrated by a prepondance of the evidence that the amount in controversy is more than $75,000.

**C. CONCLUSION**

9. The Defendant failed to supply the court with concrete documentary evidence and lacks sound

basis in law that clearly and plainly articulates the Defendant New Rez LLC D/B/C, Shellpoint

Mortgage Servicing Supplemental Brief Regarding the amount in controversy and that proves the

jurisdictional threshold was not by the preponderance of evidence. The Removal lacks merit and

does not address the amount in controversy. For these reasons, plaintiff asks the Court to grant

this motion and remand this suit to the state court where it was originally filed. Defendant shall

pay to Plaintiff all costs and expenses, including reasonable attorney's fees, incurred as a result of

this removal action in the amount of $2,500.00.

Dated: February 1, 2022

Respectfully submitted,

Charles Mosely, Pro per
3005 Nita Street
Houston, Texas 77051
830-522-5836

## **CERTIFICATE OF SERVICE**

    This is to certify that a true, correct and complete copy of the foregoing document has been served via email as follows on February 1, 2022

By: _____
Charles Mosely Pro per

C. Charles Townsend
Charles.townsend@akerman.com
2001 Ross Ave., Ste. 3600
Dallas, TX. 75201
Phone 214-720-4300
Walter McInnis,

SBN: 24046394, SDTX: 588724
walter.mcinnis@akerman.com
--Attorney in Charge
AKERMAN LLP
2001 Ross Avenue, Suite 3600
Dallas, Texas 75201
Telephone:214.720.4300
Facsimile: 214.981.9339

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **CHARLES MOSELY,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. 4:21-cv-00396** |
| | § | **Jury Demanded** |
| **NEWREZ MORTGAGE LLC D/B/A** | § | |
| **SHELLPOINT MORTGAGE** | § | |
| **SERVICING,** | § | |
| **Defendant.** | § | |

**ORDER OF REMAND**

This cause having come on for hearing on the motion of Plaintiff, Charles Mosely to remand this action to the District Court, Harris County, Texas, and the court having considered the arguments of counsel and affidavits submitted in support of and against this motion, it appears to the court that this action was removed improperly and the court is without jurisdiction over the subject matter of this action.

**THE COURT FINDS THAT:**

A.    This court is without jurisdiction to hear this action because although jurisdiction is claimed by the Defendant based on diversity of citizenship of the parties, the amount in controversy in this action, exclusive of interest and costs is not greater than $75,000.00.

**WHEREFORE**, it is ordered that the Plaintiff's motion is **GRANTED** and that this

action is remanded to the District Court, Harris County, Texas, and the Clerk of this court shall mail a copy of this order via certified mail to the Clerk of the District Court, Harris County, Texas.  Upon receipt of this order, said court may proceed with the action according to the laws and procedures of the courts of the State of Texas.

**FURTHER**, it is order that Defendant shall pay to Plaintiff all costs and expenses, including reasonable attorney's fees, incurred as a result of this removal action in the amount of $2,500.00.

**SIGNED THIS** _____ 2022.

_____
JUDGE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
SOUTHERN DIVISION

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **CHARLES MOSELY,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. 4:21-cv-00396** |
| | § | **Jury Demanded** |
| **NEWREZ  MORTGAGE  LLC  D/B/A** | § | |
| **SHELLPOINT        MORTGAGE** | § | |
| **SERVICING,** | § | |
| **Defendant.** | § | |

## PLAINTIFF'S VERIFICATION BY AFFIDAIT

| | |
|---|---|
| | § |
| STATE OF TEXAS | |
| HARRIS  COUNTY | § |

AFFIDAVIT OF Charles Mosely

Before me, the undersigned notary, on this day personally appeared Charles Mosely, the affiant, a person whose identity is known to me. After I administered an oath, affiant testified as follows:

I, Charles Mosely, did not request injunctive foreclosure relief. On or about January 20, 2021, I file my Original Petition in Harris County District Court. I believe it is called Double tracking. Laws prohibit mortgage servicers from foreclosing on my home while considering my loan modification application. See Exhibit ___ requesting my endorsement of the Modification offer. I strongly suspect the lender would prefer to quash my payment inquiries.

I made the required payments to show good faith, however, it is not in the *best interest* of my family and I to agree to the amount owned in addition to extremely high interest rate. I have indicated in the last Qualified Written Request to Shellpoint Mortgage Servicing to validate their accounting and the promissory note will be paid off. It seems we have a communication problem!

To put this ordeal in some context the last five years I have;

2016    I filed Complaint Case No. 2016-88212 in Harris County, Texas

2017    Dec. 25, Xmas night my home caught fire, Data loss, house inhabitable to this day.

2018        Jan. 12, filed Notice Of Nonsuit for the above mention case. Due to displacement and loss of data, regrettably this was the best option, because I was not prepared to present my case. My intention was to do a refile. So much for good intentions.

2020        Filed Bankruptcy May 29, Motion for Voluntary Dismissal Nov.2. Attorney refuse or unwillingness to give Notice of *bankruptcy adversary proceeding*. What disappointment, my feeling was having counsel would reduce some stress and give time to do some the things needed to do. See Exhibit_____

2021    Jan. 20, I file my Original Petition in Harris County District Court.

        Feb. 2,  Shellpoint Mortgage Servicing filed Notice of Removal.

        We are talking about approximately a $35,000 promissory note we are not talking about a house of opulence. I have attempted to work with the holders of the note, to no avail. I have submitted Qualified Written Requests and complaints to CFPB. I'm fully aware that is no such thing, as something for nothing.

        My interpretation of this helter-skelter relationship is read the numbers and weep, pay us because we don't have to validate our numbers because you live in the great state of Texas, which is a non-judicial foreclose state. See Exhibit _____

     1. My name is Charles Mosely. I am competent to make this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.



SWORN TO and SUBSCRIBED before me by Charles Mosely on February 1, 2022.

Notary Public in and for the State of Texas

TAIASHA NICOLE BRADFORD
Notary ID # 131770270
My Commission Expires
October 24, 2022

# EXHIBIT 1

## APPRAISED VALUE HISTORY: 0810240000036

🖶 **Print**

| Tax Year: | 2021 | 2020 | 2019 | 2018 | 2017 |
|---|---|---|---|---|---|
| Appraised Value: | $30,250 | 72,886 | 20,000 | 43,696 | 29,700 |

(The appraised value shown on this screen may be less than the property's January 1 market value if the property is a residence homestead and is subject to a cap on annual increases in appraised value.)

**-close window-**

HARRIS COUNTY APPRAISAL DISTRICT
REAL PROPERTY ACCOUNT INFORMATION
0810240000036

🖨 **Print** ✉

Similar Owner Name | Nearby Addresses | Same Street Name | Related Map 5352B

Ownership History

### Owner and Property Information

| | | | |
|---|---|---|---|
| Owner Name & Mailing Address: | **MOSELY CHARLES R**<br>**3030 CHIMIRA LN**<br>**HOUSTON TX 77051-4114** | Legal Description: | **W 33 FT OF LT 27 & E 22 FT OF LT 28 BLK 24 REEDWOODS** |
| | | Property Address: | **3005 NITA ST**<br>**HOUSTON TX 77051** |

| State Class Code | Land Use Code |
|---|---|
| A1 -- Real, Residential, Single-Family | 1001 -- Residential Improved |

| Land Area | Total Living Area | Neighborhood | Neighborhood Group | Market Area | Map Facet |
|---|---|---|---|---|---|
| 6,050 SF | 932 SF | 8461 | 1321 | 132 -- 1C South of Old Spanish Trail btwn SH 288 and I-45 | 5352B |

### Value Status Information

| Value Status | Notice Date | Shared CAD |
|---|---|---|
| Noticed | 03/31/2021 | No |

### Exemptions and Jurisdictions

| Exemption Type | Districts | Jurisdictions | Exemption Value | ARB Status | 2020 Rate |
|---|---|---|---|---|---|
| None | 001 | HOUSTON ISD | | Certified: 08/06/2021 | 1.133100 |
| | 040 | HARRIS COUNTY | | Certified: 08/06/2021 | 0.391160 |
| | 041 | HARRIS CO FLOOD CNTRL | | Certified: 08/06/2021 | 0.031420 |
| | 042 | PORT OF HOUSTON AUTHY | | Certified: 08/06/2021 | 0.009910 |
| | 043 | HARRIS CO HOSP DIST | | Certified: 08/06/2021 | 0.166710 |
| | 044 | HARRIS CO EDUC DEPT | | Certified: 08/06/2021 | 0.004993 |
| | 048 | HOU COMMUNITY COLLEGE | | Certified: 08/06/2021 | 0.100263 |
| | 061 | CITY OF HOUSTON | | Certified: 08/06/2021 | 0.561840 |

**Estimated taxes for this property can be found at** www.harrispropertytaxes.org.

Texas law prohibits us from displaying residential photographs, sketches, floor plans, or information indicating the age of owner on our website. You can inspect this information or get a copy at HCAD's information center at 13013 NW F

### Valuations

| | Value as of January 1, 2020 | | | Value as of January 1, 2021 | |
|---|---|---|---|---|---|
| | Market | Appraised | | | Market |
| Land | 27,225 | | Land | | 30,150 |
| Improvement | 45,661 | | Improvement | | 100 |
| Total | 72,886 | 72,886 | Total | | 30,250 |

**5-Year Value History**

### Land

Market Value Land

| Line | Land Use | Unit | Units | Size | Site | Appr O/R | Appr O/R | Total Unit | Adj Unit |
|---|---|---|---|---|---|---|---|---|---|

# EXHIBIT 2



**APPRAISAL REPORT OF**

**THE PROPERTY LOCATED AT**

3005 NITA ST

HOUSTON, TX 77051-2829

**as of**

04/02/2021

**for**

CHARLES R MOSELY
3030 CHIMIRA LN
HOUSTON, TX 77051

**by**

JONES APPRAISAL SERVICE

PO BOX 980723
HOUSTON, TX 77098

# Uniform Residential Appraisal Report
File # NITA090S

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

**SUBJECT**

| | |
|---|---|
| Property Address 3005 NITA ST | City HOUSTON   State TX   Zip Code 77051-2829 |
| Borrower MOSELY, CHARLES R | Owner of Public Record MOSELY, CHARLES R   County HARRIS |

Legal Description  WEST 33 FT OF LOT 27, & E 22 FT OF LOT 28, BLOCK 24, REEDWOODS

| | | | |
|---|---|---|---|
| Assessor's Parcel # 081-024-000-0036 | Tax Year 2020 | R.E. Taxes $ 1,749 | |
| Neighborhood Name REEDWOODS | Map Reference 573F | Census Tract 3313 | |

Occupant ☐ Owner  ☐ Tenant ☒ Vacant    Special Assessments $ 0    ☐ PUD   HOA $ 0   ☐ per year   ☐ per month

Property Rights Appraised  ☒ Fee Simple   ☐ Leasehold   ☐ Other (describe)

Assignment Type  ☐ Purchase Transaction   ☐ Refinance Transaction   ☒ Other (describe) MARKET VALUE

Lender/Client  CHARLES R MOSELY    Address 3030 CHIMIRA LN, HOUSTON, TX 77051

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of the appraisal?  ☐ Yes ☒ No

Report data source(s) used, offering price(s), and date(s).  HCAD;HOMEOWNER

**CONTRACT**

☐ I  ☐ did  ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $         Date of Contract         Is the property seller the owner of public record? ☐ Yes ☐ No   Data Source(s)

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☐ No

If Yes, report the total dollar amount and describe the items to be paid:

**NEIGHBORHOOD**

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | Percent Land Use % | |
|---|---|---|---|---|---|---|---|---|---|
| Location | ☐ Urban ☒ Suburban ☐ Rural | | Property Values ☒ Increasing ☐ Stable ☐ Declining | | | PRICE $(000) | AGE (yrs) | One-Unit | 100 % |
| Built-Up | ☒ Over 75% ☐ 25-75% ☐ Under 25% | | Demand/Supply ☒ Shortage ☐ In Balance ☐ Over Supply | | | Low 28 | 1 | 2-4 Unit | 0 % |
| Growth | ☐ Rapid ☒ Stable ☐ Slow | | Marketing Time ☒ Under 3 mths ☐ 3-6 mths ☐ Over 6 mths | | | High 202 | 69 | Multi-Family | 0 % |
| | | | | | | Pred. 97 | 61 | Commercial | 0 % |
| | | | | | | | | Other | 0 % |

Neighborhood Boundaries  HOLMES RD - NORTH;  HWY 288 - WEST;  W OREM - SOUTH;  CULLEN BLVD - EAST

Neighborhood Description  SUBDIVISION IS LOCATED IN SOUTHEAST HOUSTON.  SUBDIVISION IS COMPRISED OF ONE STORY  WOOD SIDING. HOUSTON ISD SERVES THE AREA.  THERE IS  PUBLIC TRANSPORTATION.  POLICE AND FIRE PROTECTION ARE IN PROXIMITY TO THE AREA.

Market Conditions (including support for the above conclusions)   DEMAND APPEARS TO EXCEED SUPPLY   PRESENTLY THERE FOUR AVAILABLE WITH, FOUR OPTION PENDING, TWO PENDING SALES.  WITHIN THE PRIOR YEAR 24 SALES HAVE WITH A MARKETING TIME AVERAGING  DAYS 44A MEDIAN DOM OF 11.

**SITE**

| | | |
|---|---|---|
| Dimensions 55Fx109LSx55Rx109RS | Area 5995 sf | Shape RECTANGULAR   View N;Res;Res |

Specific Zoning Classification NO ZONING    Zoning Description  NO ZONING IN THE CITY OF HOUSTON

Zoning Compliance  ☐ Legal   ☐ Legal Nonconforming (Grandfathered Use)   ☒ No Zoning   ☐ Illegal (describe)

Is the highest and best use of the subject property as improved (or as proposed per plans and specifications) the present use?  ☒ Yes   ☐ No If No, describe

HOUSTON HAS NO ZONING HOWEVER THIS DOES NOT AFFECT MARKETABILITY AND HOME COULD BE REBUILT IF DESTROYED

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street ASPHALT | ☒ | |
| Gas | ☒ | | Sanitary Sewer | ☒ | | Alley NONE | | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No   FEMA Flood Zone X500   FEMA Map No. 48201C0870M   FEMA Map Date 05/02/2019

Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No. If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No If Yes, describe

NO SURVEY PROVIDED; THEREFORE  DIFFICULT TO DETERMINE ANY ADVERSE EASEMENTS, ENCROACHMENTS OR  CONDITIONS.  TYPICAL UTILITY EASEMENTS EXIST. *** SEE ADDITIONAL COMMENTS ***

**IMPROVEMENTS**

| General Description | | Foundation | | Exterior Description   materials/condition | | Interior   materials/condition | |
|---|---|---|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | | ☒ Concrete Slab ☐ Crawl Space | | Foundation Walls SLAB/GD | | Floors WD/POOR | |
| # of Stories 1.00 | | ☐ Full Basement ☐ Partial Basement | | Exterior Walls WD/AVG | | Walls FRAMING/PR | |
| Type ☐ Det. ☐ Att. ☐ S-Det/End Unit | | Basement Area 0 sq. ft. | | Roof Surface COMP/GD | | Trim/Finish NONE | |
| ☒ Existing ☐ Proposed ☐ Under Const. | | Basement Finish 0 % | | Gutters & Downspouts ALUM/ALUM/GD | | Bath Floor NONE | |
| Design (Style) RANCH | | ☐ Outside Entry/Exit ☒ Sump Pump | | Window Type VNL/GD | | Bath Wainscot NONE | |
| Year Built 1955 | | Evidence of ☐ Infestation | | Storm Sash/Insulated NO/YES | | Car Storage None | |
| Effective Age (Yrs) 70 | | ☐ Dampness ☐ Settlement | | Screens MESH/AVG | | ☒ Driveway # of Cars 2 | |
| Attic | ☐ None | Heating ☒ FWA ☐ HWBB ☐ Radiant | | Amenities | ☐ WoodStove(s) # 0 | Driveway Surface CONCRE | |
| ☒ Drop Stair ☐ Stairs | | ☐ Other   Fuel NONE | | Fireplace(s) # 0 | ☒ Fence CLF | ☐ Garage # of Cars 0 | |
| ☐ Floor ☐ Scuttle | | Cooling ☐ Central Air Conditioning | | Patio/Deck NONE | ☒ Porch COV | ☐ Carport # of Cars 0 | |
| ☐ Finished ☐ Heated | | ☐ Individual ☐ Other NONE | | Pool NONE | ☐ Other NONE | ☐ Att. ☐ Det. ☐ Built-in | |

Appliances ☐ Refrigerator ☐ Range/Oven ☐ Dishwasher ☐ Disposal ☐ Microwave ☐ Washer/Dryer ☐ Other (describe)

Finished area above grade contains:  5 Rooms   2 Bedrooms   1.0 Bath(s)   932 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.)   SUBJECT IN POOR CONDITION SUSTAINED EXTENSIVE FIRE DAMAGE AND IS NOT HABITABLE  ALL SYSTEMS ARE DESTROYED AND FOUNDATION IS QUESTIONABLE BECAUSE OF INTENSE HEAT

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).   C6;No updates in the prior 15 years;SUBJECT IS INPOOR CONDITION SUSTAINED EXTENSIVE FIRE DAMAGE AND STRIPPED DOWN TO FRAMING

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No If Yes, describe

THE APPRAISER HAS NOT COMPLETED ANOTHER APPRAISAL ON THIS PROPERTY NOR ANY OTHER SERVICES IN ANY CAPACITY WITHIN THE PRIOR THREE YEARS FROM THE EFFECTIVE DATE OF THE APPRAISAL.  PREDOMINANT VALUE IS GREATER THAN ESTIMATED VALUE BECAUSE OF SUBJECT'S CONDITION AND SQUARE FOOTAGE. *** See Additional Comments ***

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No If No, describe

SUBJECT CONFORMED TO THE NEIGHBORHOOD IN FUNCTIONAL UTILITY STYLE AND CONDITION  BEFORE FIRE

# Uniform Residential Appraisal Report

File # NITA090S

| There are | 4 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ | 39,000 | to $ | 140,000 | . |
| There are | 24 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ | 28,000 | to $ | 202,000 | . |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 3005 NITA ST<br>HOUSTON, TX 77051-2829 | 3126 SUNNYDALE DR<br>HOUSTON, TX 77051-4638 | | 3031 GROTON DR<br>HOUSTON, TX 77051-4625 | | 8601 AMADWE ST<br>HOUSTON, TX 77051-2609 | |
| Proximity to Subject | | 0.34 miles SE | | 0.44 miles S | | 2.05 miles NE | |
| Sale Price | $ | $ | 36,050 | $ | 45,000 | $ | 32,000 |
| Sale Price/Gross Liv. Area | $ sq. ft. | $ 33.82 sq. ft. | | $ 35.74 sq. ft. | | $ 32.39 sq. ft. | |
| Data Source(s) | | HCADHMLS#80987918;DOM 62 | | HCADHMLS#66897203;DOM 19 | | HCADHMLS#9565480;DOM 31 | |
| Verification Source(s) | | CAD | | CAD | | CAD | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment |
| Sale or Financing | | ArmLth | | ArmLth | | ArmLth | |
| Concessions | | Conv;0 | | Conv;0 | | Conv;0 | |
| Date of Sale/Time | | s01/20;c10/19 | | s08/19;c07/19 | | s07/20;c07/20 | |
| Location | N;Res;Res | N;Res;Res | | N;Res;Res | | N;Res;Res | |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | 5995 sf | 5000 sf | 0 | 5000 sf | 0 | 4400 sf | 0 |
| View | N;Res;Res | N;Res;Res | | N;Res;Res | | N;Res;Res | |
| Design (Style) | DT1;RANCH | DT1;RANCH | | DT1;RANCH | | DT1;RANCH | |
| Quality of Construction | Q4 | Q4 | | Q4 | | Q4 | |
| Actual Age | 66 | 61 | | 60 | | 70 | 0 |
| Condition | C6 | C6 | | C6 | | C6 | |
| Above Grade | Total | Bdrms. | Baths | Total | Bdrms. | Baths | Total | Bdrms. | Baths | Total | Bdrms. | Baths |
| Room Count | 5 | 2 | 1.0 | 6 | 3 | 1.0 | 0 | 6 | 3 | 1.0 | 0 | 5 | 2 | 1.0 | |
| Gross Living Area | 932 sq. ft. | 1,066 sq. ft. | -1,340 | 1,259 sq. ft. | -3,270 | 988 sq. ft. | -560 |
| Basement & Finished | 0sf | 0sf | | 0sf | | 0sf | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Heating/Cooling | NONE/NONE | GFWA/CAC | -4,000 | NONE/NONE | | NONE/NONE | |
| Energy Efficient Items | INSULATION | INSULATION | | INSULATION | | INSULATION | |
| Garage/Carport | 2dw | 2dw | | 2dw | | 2dw | |
| Porch/Patio/Deck | PORCH | PORCH | | PORCH | | PORCH | |
| Net Adjustment (Total) | | | + X - | $ -5,340 | + X - | $ -3,270 | + X - | $ -560 |
| Adjusted Sale Price<br>of Comparables | | Net Adj. 14.81 %<br>Gross Adj. 14.81 % | $ 30,700 | Net Adj. 7.27 %<br>Gross Adj. 7.27 % | $ 41,700 | Net Adj. 1.75 %<br>Gross Adj. 1.75 % | $ 31,400 |

I | X | did | did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research | | did | X | did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

Data Source(s)  MLS;STEWART TITLE

My research | | did | X | did not reveal any prior sales or transfers of the comparable sales for the prior year to the date of sale of the comparable sale.

Data Source(s)  MLS;STEWART TITLE

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | HMLS;TXRCRDS | HCADHMLS | HCADHMLS# | HCADHMLS# |
| Effective Date of Data Source(s) | 04/02/2021 | 04/02/2021 | 04/02/2021 | 04/02/2021 |

Analysis of prior sale or transfer history of the subject property and comparable sales  THE COMPARABLES TO THE APPRAISERS KNOWLEDGE HAVE NOT HAD ANY PRIOR SALE WITHIN  ONE YEAR WITHIN THE DATE OF THE APPRAISAL WITH THE EXCEPTION OF THAT WHICH WAS NOTED.  THE SUBJECT HAS NOT SOLD WITHIN THE PAST THREE YEARS

Summary of Sales Comparison Approach  COMPARABLES WERE TAKEN FROM THE SUBJECT AREA AND NEARBY AREAS IN SOMEWHAT SIMILAR  CONDITION.  THE COMPARABLES AS THE WERE UNINHABITABLE WITH COMPARABLE ONE BEING A HUD HOME SOLD IN AS IS CONDITION WITH HOLES IN WALLS AND CEILINGS AND WATER DAMAGE. COMPARABLE TWO HAS SIMILAR DIFFERED MAINTENANCE AND IS UNINHABITABLE AS WELL.  COMPARABLE THREE WAS A FNMA FORECLOSURE AND WAS IN POOR CONDITION BUT NOT INHABITABLE BUT WAS NOTED BY THE OWNER TO USE CAUTION WHEN SHOWING.  COMPARABLE FOUR WAS ALSO IN POOR CONDITION SOLD AS IS.

Indicated Value by Sales Comparison Approach $ 32,000

Indicated Value by:  Sales Comparison Approach $ 32,000      Cost Approach (if developed) $ 59,638      Income Approach (if developed) $ 0

THE SALES COMPARISON APPROACH RECEIVED PRIMARY CONSIDERATION IN THE VALUE ESTIMATE BECAUSE IT  BEST REFLECTS THE ATTITUDES AND ACTIONS OF BUYERS AND SELLERS IN THE MARKET PLACE.

This appraisal is made | X | "as is," | | subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, | | subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or | | subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 32,000 , as of  04/02/2021 , which is the date of inspection and the effective date of this appraisal.

Appraisal Report

## Uniform Residential Appraisal Report
File # NITA090S

**ADDITIONAL COMMENTS**

I CERTIFY THAT, TO THE BEST OF MY KNOWLEDGE AND BELIEF:  -THE STATEMENTS OF FACT CONTAINED IN THIS REPORT ARE TRUE AND CORRECT. - THE REPORTED ANALYSES, OPINIONS, AND CONCLUSIONS ARE LIMITED ONLY BY THE REPORTED ASSUMPTIONS AND LIMITING CONDITIONS, AND ARE MY PERSONAL, IMPARTIAL, AND UNBIASED PROFESSIONAL ANALYSES, OPINIONS, AND CONCLUSIONS. - I HAVE NO PRESENT OR PROSPECTIVE INTEREST IN THE PROPERTY THAT IS THE SUBJECT OF THIS REPORT, AND NO PERSONAL INTEREST WITH RESPECT TO THE PARTIES INVOLVED IN THIS ASSIGNMENT. - MY ENGAGEMENT IN THIS ASSIGNMENT WAS NOT CONTINGENT UPON DEVELOPING OR REPORTING A PREDETERMINED RESULT. - MY COMPENSATION FOR COMPLETING THIS ASSIGNMENT IS NOT CONTINGENT UPON THE DEVELOPMENT OR REPORTING OF A PREDETERMINED VALUE OR DIRECTION IN VALUE THAT FAVORS THE CAUSE OF THE CLIENT, THE AMOUNT OF THE VALUE OPINION, THE ATTAINMENT OR A STIPULATED RESULT, OR THE OCCURRENCE OF A SUBSEQUENT EVENT DIRECTLY RELATED TO THE INTENDED US OF THIS APPRAISAL. - MY ANALYSES, OPINION, AND CONCLUSIONS WERE DEVELOPED, AND THIS REPORT HAS BEEN PREPARED, IN CONFORMITY WITH THE UNIFORM STANDARDS OF PROFESSIONAL APPRAISAL PRACTICE. - I HAVE MADE A PERSONAL INSPECTION OF THE PROPERTY THAT IS THE SUBJECT OF THIS REPORT.THIS APPRAISAL REPORT IS PREPARED FOR THE SOLE AND EXCLUSIVE USE OF THE LENDER, TO ASSIST WITH THE MORTGAGE LENDING DECISION. THIS APPRAISER IS NOT A HOME INSPECTOR.  THIS REPORT SHOULD NOT BE  RELIED UPON TO DISCLOSE ANY CONDITIONS PRESENT IN THE SUBJECT PROPERTY.  THE APPRAISAL REPORT DOES NOT GUARANTEE THAT THE PROPERTY IS FREE OF DEFECTS. A PROFESSIONAL HOME INSPECTION IS RECOMMENDED.

INTENDED USER THE INTENDED USER OF THIS APPRAISAL REPORT IS THE LENDER/CLIENT.  THE INTENDED USE IS TO EVALUATE THE PROPERTY THAT IS THE SUBJECT OF THIS APPRAISAL FOR A MORTGAGE FINANCE TRANSACTION, SUBJECT TO THE STATED SCOPE OF WORK, PURPOSE OF THE APPRAISAL, REPORTING REQUIREMENTS OF THIS APPRAISAL REPORT FORM, AND DEFINITION OF MARKET VALUE.  NO ADDITIONAL INTENDED USERS ARE IDENTIFIED BY THE APPRAISER.        APPRAISER INDEPENDENCE

No employee, director, officer, or agent of the Seller, or any other third party acting as joint venture partner, independent contractor, appraisal company, appraisal management company, or partner on behalf of the Seller has threatened or attempted to influence the development, reporting, result, or review of this assignment through coercion, extortion, collusion, compensation, instruction, inducement, intimidation, bribery or in any other manner.

I represent and warrant that, as of the date of this Report, I have had no contact with anyone that would in any way be construed as a violation of the Appraiser Independence Requirements; the only individuals with whom I have had any contact regarding my preparation of this Report have been limited to representatives of CHARLES MOSELY and the designated individual required for entry into the subject property for purposes of inspection.  No agent or representative of lender/client whose name appears on the first page of this Report has contacted me directly and I am obligated to and would report any such unauthorized contact, whether in person, by phone, or electronically, to CHARLES MOSELY immediately.  -- Highest and Best Use:

It has been determined the highest and best use of the site as of the effective date of value is the current use, which is single family residential. This conclusion is based upon the use being Legally Permissible under current zoning regulations; it is Physically Possible based upon the size and dimensions being sufficient to sustain a residential use consistent with the market area demand; it is Financially Feasible because the present use produces a positive return to the land after considering risk and all costs to create and maintain the present use; and it is Maximally Productive based upon the conclusion of most probable market value relative to risk. The subject is surrounded by conforming single family land use, there are no known or observed land use changes that would cause the present use to be anything different as of the effective date of value.

**COST APPROACH TO VALUE** (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)

SITE VALUE ESTIMATED IS TAKEN FROM LAND SALES IN THE IMMEDIATE AREA

| ESTIMATED | | REPRODUCTION OR | X | REPLACEMENT COST NEW | OPINION  OF  SITE  VALUE.............................=$ | | | 20,000 |
|---|---|---|---|---|---|---|---|---|
| Source of cost data   MARSHALL & SWIFT | | | | | Dwelling | 932  Sq. Ft. @ $ | 106.00 ..............=$ | 98,792 |
| Quality rating from cost service FAIR | | Effective date of cost data   06/20 | | | | Sq. Ft. @ $ | ..............=$ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | | | | Garage/Carport | 0  Sq. Ft. @ $ | 0.00 ..............=$ | 0 |
| NO ADVERSE FUNCTIONAL OR EXTERNAL FACTORS MEASURABLE | | | | | Total Estimate of Cost-New | | ..............=$ | 98,792 |
| DEFINABLE IN THIS MARKET.  DATA FOR THE COST APPROACH WAS | | | | | Less | Physical | Functional | External | |
| OBTAINED FROM MARSHALL AND SWIFT. | | | | | Depreciation | 69,154 | | =$ ( | 69,154) |
| | | | | | Depreciated  Cost  of  Improvements.............=$ | | | 29,638 |
| | | | | | 'As-is'  Value  of  Site  Improvements............=$ | | | 10,000 |
| Estimated Remaining Economic Life (HUD and VA only) | | 30 | Years | | Indicated  Value  By  Cost  Approach.............=$ | | | 59,638 |

**INCOME  APPROACH  TO  VALUE** (not  required  by  Fannie  Mae)

| Estimated  Monthly  Market  Rent $ | 1,300 | X Gross Rent Multiplier | 105 | = $ | 136,500 | Indicated Value by Income Approach |
|---|---|---|---|---|---|---|

Summary of Income Approach (including support for market rent and GRM)

**PROJECT  INFORMATION  FOR  PUDs** (if  applicable)

| Is the developer/builder in control of the Homeowners' Association (HOA)? | | Yes | | No | Unit type(s) | | Detached | | Attached |
|---|---|---|---|---|---|---|---|---|---|

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal name of project

| Total number of phases | Total number of units | Total number of units sold |
|---|---|---|
| Total number of units rented | Total number of units for sale | Data Source(s) |

| Was the project created by the conversion of existing building(s) into a PUD? | | Yes | | No  If Yes, date of conversion |
|---|---|---|---|---|

| Does the project contain any multi-dwelling units? | | Yes | | No | Data Source(s) |
|---|---|---|---|---|---|

| Are the units, common elements, and recreation facilities complete? | | Yes | | No | If No, describe the status of completion. |
|---|---|---|---|---|---|

| Are the common elements leased to or by the Homeowners' Association? | | Yes | | No | If Yes, describe the rental terms and options. |
|---|---|---|---|---|---|

Describe common elements and recreational facilities

JONES APPRAISAL SERVICE

# Uniform Residential Appraisal Report

File # NITA090S

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

---

Freddie Mac Form 70 March 2005            UAD Version 9/2011            Page 4 of 6            Fannie Mae Form 1004 March 2005

Appraisal Report

**Uniform Residential Appraisal Report**      File # NITA090S

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

Appraisal Report

# Uniform Residential Appraisal Report

File # NITA090S

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature _Cheryl Jones_ | Signature _____ |
| Name  CHERYL JONES | Name _____ |
| Company Name  JONES APPRAISAL SERVICE | Company Name _____ |
| Company Address  PO BOX 980723 | Company Address _____ |
| HOUSTON, TX 77098 | |
| Telephone Number  713-643-9660;CELL281-630-8349;FAX832-201-9551 | Telephone Number _____ |
| Email Address  cjonesappraisal@yahoo.com | Email Address _____ |
| Date of Signature and Report  04/06/2021 | Date of Signature _____ |
| Effective Date of Appraisal  04/02/2021 | State Certification # _____ |
| State Certification #  1326601 | or State License # _____ |
| or State License # | State _____ |
| or Other _____ State # | Expiration Date of Certification or License _____ |
| State  TX | |
| Expiration Date of Certification or License  02/28/2023 | SUBJECT PROPERTY |

ADDRESS OF PROPERTY APPRAISED

3005 NITA ST

HOUSTON, TX 77051-2829

APPRAISED VALUE OF SUBJECT PROPERTY  $ 32,000

LENDER/CLIENT

Name  No AMC

Company Name  CHARLES R MOSELY

Company Address  3030 CHIMIRA LN

HOUSTON, TX 77051

Email Address _____

SUBJECT PROPERTY

☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
     Date of Inspection _____
☐ Did inspect interior and exterior of subject property
     Date of Inspection _____

COMPARABLE SALES

☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
     Date of Inspection _____

JONES APPRAISAL SERVICE

**ADDITIONAL COMMENTS**

| | |
|---|---|
| Borrower or Owner | MOSELY, CHARLES R |
| Property Address | 3005 NITA ST |
| City   HOUSTON | County   HARRIS          State   TX          Zip Code   77051-2829 |
| Lender or Client | CHARLES R MOSELY |

## SCOPE OF APPRAISAL
THE APPRAISER VISUALLY OBSERVED THE EXTERIOR AND INTERIOR OF THE SUBJECT PROPERTY (INCLUDING MEASURING THE IMPROVEMENTS), THE EXTERIOR OF THE COMPARABLE SALES AND OFFERINGS, AND GENERAL NEIGHBORHOOD CONDITIONS. STATEMENTS REGARDING CONDITION OF STRUCTURES AND EQUIPMENT ARE NOT INTENDED TO BE CONSTRUED AS STRUCTURAL OR MECHANICAL INSPECTIONS.

THE SCOPE OF THIS APPRAISAL INCLUDES ANALYZING THE RECENT SALES HISTORY OF THE SUBJECT AS WELL AS THE SUBJECT'S MARKETPLACE AND NEARBY COMPETING MARKETS.  THE APPRAISER HAS COLLECTED DATA ON A NUMBER OF SALES.  THE MOST COMPARABLE OF THE SALES HAS BEEN COMPARED DIRECTLY WITH THE SUBJECT.  THE DATA ACCUMULATED FROM THE OTHER SALES HAS BEEN ANALYZED TO ESTABLISH A BASIS FOR TIME, FINANCING, LOCATION, CONDITION, SITE AND OTHER NECESSARY ADJUSTMENTS.

## NEIGHBORHOOD DESCRIPTION
POLICE AND FIRE PROTECTION ARE WITHIN PROXIMITY TO THE SUBJECT AREA

## HIGHEST AND BEST USE
HIGHEST AND BEST USE IS DEFINED BY THE MOST REASONABLY PROBABLE AND LEGAL USE OF IMPROVED PROPERTY WHICH IS PHYSICAL POSSIBLE, APPROPRIATELY SUPPORTED, FINANCIAL FEASIBLE AND THAT RESULTS IN THE HIGHEST VALUE.  THE SUBJECT PROPERTY AS IMPROVED IS THE SUBJECT'S HIGHEST AND BEST  USE.

## ADVERSE SITE CONDITIONS AND/OR EXTERNAL FACTORS
HIGHEST AND BEST USE DUE TO LEGAL AND PHYSICAL  RESTRICTIONS INHERENT TO THE SUBJECT SITE, THE HIGHEST AND BEST USE IS THE PRESENT USE, SINGLE  FAMILY RESIDENTIAL.

## ADDITIONAL FEATURES
NONE

## PHYSICAL DEFICIENCIES AND / OR ADVERSE CONDITIONS

THERE ARE NO PHYSICAL DEFICIENCIES OR ADVERSE CONDITIONS THAT WOULD AFFECT THE LIVABILITY, SOUNDNESS OR STRUCTURAL INTEGRITY OF THE APPRAISAL THERE ARE NO APPARENT ADVERSE ENVIRONMENTAL CONDITIONS THAT WOULD NEGATIVELY IMPACT THE  VALUE OF THE SUBJECT PROPERTY.  SEE #6 IN LIMITING CONDITIONS.  THERE ARE NO APPARENT ADVERSE  ENVIRONMENTAL CONDITIONS THAT WOULD NEGATIVELY IMPACT THE VALUE OF THE SUBJECT PROPERTY.  THE EXISTENCE OF ANY ENVIRONMENTAL HAZARDS WAS NOT APPARENT FOLLOWING ROUTINE OBSERVATIONS  AND INQUIRIES ABOUT THE SUBJECT; HOWEVER, THIS APPRAISER IS NOT AN EXPERT IN THE IDENTIFICATION OF  HAZARDOUS SUBSTANCES OR DETRIMENTAL CONDITIONS  AND NO RESPONSIBILITY IS ASSUMED OR IMPLIED FOR  ANY SUCH EXPERTISE OR KNOWLEDGE TO DISCOVER THEM.  DUE TO THESE LIMITATIONS, THIS APPRAISER  ASSUMED NO RESPONSIBILITY FOR THE EXISTENCE OF ANY ADVERSE ENVIRONMENTAL HAZARDS.

## CONFORMANCE OF PROPERTY TO NEIGHBORHOOD

## RECONCILIATION
COMPARISON APPROACH RECEIVED PRIMARY CONSIDERATION IN THE VALUE ESTIMATE BECAUSE IT BEST  REFLECTS THE ATTITUDES AND ACTIONS OF BUYERS AND SELLERS IN THE MARKET PLACE.  THE COST  APPROACH RECEIVED SECONDARY CONSIDERATION AND SUPPORTS THE SALES COMPARISON APPROACH.  THE  INCOME APPROACH WAS NOT CONSIDERED BECAUSE OF THE SCARCITY OF RENTAL DATA AND HOMES IN THIS  MARKET ARE NOT GENERALLY PURCHASED FOR THEIR INCOME PRODUCING POTENTIAL.

## CONDITIONS OF APPRAISAL
COMPARABLE TWO AND THREE WERE WEIGHTED MOST HEAVILY BECAUSE THEY HAD  FEWEST ADJUSTMENTS

## ADDITIONAL COMPARABLES

| | | |
|---|---|---|
| Borrower | MOSELY, CHARLES R | |
| Property Address | 3005 NITA ST | |
| City HOUSTON | County HARRIS | State TX | Zip Code 77051-2829 |
| Lender/Client | CHARLES R MOSELY | |

| FEATURE | SUBJECT | COMPARABLE SALE NO. 4 | | COMPARABLE SALE NO. 5 | | COMPARABLE SALE NO. 6 | |
|---|---|---|---|---|---|---|---|
| Address | 3005 NITA ST<br>HOUSTON, TX 77051-2829 | 79<br>HOUSTON, TX 77051 | | | | | |
| Proximity to Subject | | 2.16 miles NE | | | | | |
| Sale Price | $ | $ 45,000 | | $ | | $ | |
| Sale Price/Gross Liv. Area | $ sq. ft. | $ 48.70 sq. ft. | | $ sq. ft. | | $ sq. ft. | |
| Data Source(s) | | HCADHMLS#48472854;DOM 7 | | | | | |
| Verification Source(s) | | CAD | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment |
| Sale or Financing | | ArmLth | | | | | |
| Concessions | | Conv;0 | | | | | |
| Date of Sale/Time | | s05/20;c05/20 | | | | | |
| Location | N;Res;Res | N;Res;Res | | | | | |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | | | | |
| Site | 5995 sf | 5000 sf | 0 | | | | |
| View | N;Res;Res | N;Res;Res | | | | | |
| Design (Style) | DT1;RANCH | DT1;RANCH | | | | | |
| Quality of Construction | Q4 | Q4 | | | | | |
| Actual Age | 66 | 79 | 0 | | | | |
| Condition | C6 | C6 | | | | | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 5 2 1.0 | 6 3 1.0 | 0 | | | | |
| Gross Living Area | 932 sq. ft. | 924 sq. ft. | +60 | sq. ft. | | sq. ft. | |
| Basement & Finished | 0sf | 0sf | | | | | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | AVERAGE | AVERAGE | | | | | |
| Heating/Cooling | NONE/NONE | NONE/NONE | | | | | |
| Energy Efficient Items | INSULATION | INSULATION | | | | | |
| Garage/Carport | 2dw | 2dw | | | | | |
| Porch/Patio/Deck | PORCH | PORCH | | | | | |
| Net Adjustment (Total) | | X + - | $ 60 | + - | $ | + - | $ |
| Adjusted Sale Price | | Net Adj. 0.13 % | | Net Adj. % | | Net Adj. % | |
| of Comparables | | Gross Adj. 0.13 % $ 45,060 | | Gross Adj. % $ | | Gross Adj. % $ |

| ITEM | SUBJECT | COMPARABLE SALE #4 | COMPARABLE SALE #5 | COMPARABLE SALE #6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | HMLS;TXRCRDS | HCADHMLS | | |
| Effective Date of Data Source(s) | 04/02/2021 | 04/02/2021 | | |

**Comment on Sales Comparison**

LOCATION MAP

| Borrower or Owner | MOSELY, CHARLES R | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 3005 NITA ST | | | | | |
| City | HOUSTON | County | HARRIS | State | TX | Zip Code | 77051-2829 |
| Client | CHARLES R MOSELY | | | | | |

# FLOOD MAP

| | |
|---|---|
| Borrower or Owner | MOSELY, CHARLES R |
| Property Address | 3005 NITA ST |

| City | HOUSTON | County | HARRIS | State | TX | Zip Code | 77051-2829 |
|---|---|---|---|---|---|---|---|
| Client | CHARLES R MOSELY | | | | | | |



## Flood Zones

| | |
|---|---|
| ▬ Areas inundated by 100-year flooding | ▨ Floodway areas with velocity hazard |
| ▭ Areas inundated by 500-year flooding | ▨ Floodway areas |
| ■ Areas of undetermined but possible flood hazards | ▨ COBRA zone |

## Flood Zone Determination

**Latitude:** 29.646363
**Longitude:** -95.379689
**Community Name:**
HOUSTON, CITY OF
**Community:** 480296
**SFHA (Flood Zone):** No
**Within 250 ft. of multiple flood zones:** No
**Zone:** X500          **Map #:** 48201C0870M
**Panel:** 0870M          **Panel Date:** 05/02/2019
**FIPS Code:** 48201          **Census Tract:** 3313

This Report is for the sole benefit of the Customer that ordered and paid for the Report and is based on the property information provided by that Customer. That Customer's use of this Report is subject to the terms agreed to by that Customer when accessing this product. No third party is authorized to use or rely on this Report for any purpose. THE SELLER OF THIS REPORT MAKES NO REPRESENTATIONS OR WARRANTIES TO ANY PARTY CONCERNING THE CONTENT, ACCURACY OR COMPLETENESS OF THIS REPORT, INCLUDING ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. The seller of this Report shall not have any liability to any third party for any use or misuse of this Report.

# SITE PLAN

| Borrower or Owner | MOSELY, CHARLES R | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 3005 NITA ST | | | | | | |
| City | HOUSTON | County | HARRIS | State | TX | Zip Code | 77051-2829 |
| Client | CHARLES R MOSELY | | | | | | |



| Borrower or Owner | MOSELY, CHARLES R | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 3005 NITA ST | | | | | |
| City | HOUSTON | County | HARRIS | State | TX | Zip Code 77051-2829 |
| Client | CHARLES R MOSELY | | | | | |



## 5 Nita St, Houston, TX 77051-4139, Harris County

| MLS Beds | MLS Sq Ft | Lot Sq Ft | MLS Sale Price |
|---|---|---|---|
| 2 | 932 | 6,050 | $43,000 |
| MLS Baths | Yr Built | Type | MLS Sale Date |
| 1 | 1955 | SFR | 10/07/2008 |

**OWNER INFORMATION**

| | | | |
|---|---|---|---|
| Owner Name | Mosely Charles R | Tax Billing City & State | Houston, TX |
| Owner Occupied | No | Tax Billing Zip | 77051 |
| Carrier Route | C005 | Tax Billing Zip+4 | 4114 |
| Tax Billing Address | 3030 Chimira Ln | | |

**LOCATION INFORMATION**

| | | | |
|---|---|---|---|
| Subdivision | Reedwoods | Key Map | 573f |
| School District Name | Houston ISD | Waterfront Influence | Neighborhood |
| Neighborhood Code | Reedwood-6461.00 | Topography | Flat/Level |
| Township | Houston | Census Tract | 3312.00 |
| MLS Area | 3 | Map Facet | 573-F |
| Market Area | MEDICAL CENTER SOUTH | Traffic | Paved |

**TAX INFORMATION**

| | | | |
|---|---|---|---|
| Parcel ID | 081-024-000-0038 | % Improved | 63% |
| Parcel ID | 0810240000038 | Tax Area | 040 |
| Lot # | 27 | Water Tax Dist | 041 |
| Block # | 24 | | |
| Legal Description | W 33 FT OF LT 27 & E 22 FT OF LT 28 BLK 24 REEDWOODS | | |

**ASSESSMENT & TAX**

| Assessment Year | 2020 | 2019 | 2018 |
|---|---|---|---|
| Assessed Value - Total | $72,886 | $35,937 | $32,970 |
| Assessed Value - Land | $27,225 | | |
| Assessed Value - Improved | $45,661 | | |
| YOY Assessed Change ($) | $36,949 | $3,287 | |
| YOY Assessed Change (%) | 102.82% | 10% | |
| Market Value - Total | $72,886 | $48,269 | $43,698 |
| Market Value - Land | $27,225 | $15,125 | $15,125 |
| Market Value - Improved | $45,661 | $33,144 | $28,571 |

| Tax Year | Total Tax | Change ($) | Change (%) |
|---|---|---|---|
| 2018 | $827 | | |
| 2019 | $870 | $43 | 5.27% |
| 2020 | $1,749 | $879 | 100.95% |

| Jurisdiction | Tax Rate | | Tax Amount |
|---|---|---|---|
| Houston ISD | 1.1331 | | $825.87 |
| Harris County | .39116 | | $285.10 |
| Hc Flood Control Dist | .03142 | | $22.90 |
| Port Of Houston Authority | .00991 | | $7.22 |
| Hc Hospital Dist | .16671 | | $121.51 |
| Hc Department Of Education | .00499 | | $3.64 |
| Houston Community College | .10026 | | $73.03 |
| Houston City Of | .56184 | | $409.50 |
| Total Estimated Tax Rate | 2.3995 | | |

**CHARACTERISTICS**

| Borrower or Owner | MOSELY, CHARLES R | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 3005 NITA ST | | | | | | |
| City | HOUSTON | County | HARRIS | State | TX | Zip Code | 77051-2829 |
| Client | CHARLES R MOSELY | | | | | | |



## Certified Residential Real Estate Appraiser

**TEXAS APPRAISER LICENSING & CERTIFICATION BOARD**

Appraiser: **Cheryl Marie Jones**

License #: **TX 1326601 R**      License Expires: **02/28/2023**

Having provided satisfactory evidence of the qualifications required by the Texas Appraiser Licensing and Certification Act, Occupations Code, Chapter 1103, authorization is granted to use this title: Certified Residential Real Estate Appraiser

**Chelsea Buchholtz**
**Commissioner**

For additional information or to file a complaint please contact TALCB at www.talcb.texas.gov.

| Borrower or Owner | MOSELY, CHARLES R | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 3005 NITA ST | | | | | |
| City HOUSTON | | County HARRIS | | State TX | Zip Code | 77051-2829 |
| Client | CHARLES R MOSELY | | | | | |

**HUDSON INSURANCE COMPANY**
100 William Street, 5th Floor
New York, NY 10038



### REAL ESTATE APPRAISERS ERRORS AND OMISSIONS INSURANCE
### POLICY DECLARATIONS

**NOTICE: THIS IS A "CLAIMS MADE AND REPORTED" POLICY. THIS POLICY REQUIRES THAT A CLAIM BE MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND REPORTED TO THE INSURER, IN WRITING, DURING THE POLICY PERIOD OR AUTOMATIC EXTENDED REPORTING PERIOD.**

**THIS POLICY MAY CONTAIN PROVISIONS WHICH LIMIT THE AMOUNT OF CLAIM EXPENSES THE INSURER IS RESPONSIBLE TO PAY IN CONNECTION WITH CLAIMS. CLAIM EXPENSES SHALL BE SUBJECT TO ANY DEDUCTIBLE AMOUNT. THE PAYMENT OF CLAIM EXPENSES WILL REDUCE THE LIMITS OF LIABILITY STATED IN ITEM 4. OF THE DECLARATIONS. PLEASE READ YOUR POLICY CAREFULLY.**

### PLEASE READ THIS POLICY CAREFULLY.

Policy Number:   PRA-1AX-1000129       Renewal of:
1. **Named Insured:**   Cheryl Jones dba Jones Appraisal Service

2. **Address:**   7140 Kopman Dr
   Houston, TX 77061

3. **Policy Period:**   **From:**  February 22, 2021   **To:**  February 22, 2022

   12:01 A.M. Standard Time at the address of the **Named Insured** as stated in Number 2 above

| 4. | Limit of Liability | | Each Claim | | Policy Aggregate |
|---|---|---|---|---|---|
| | Damages Limit of Liability | A. | $1,000,000 | B. | $1,000,000 |
| | Claims Expense Limit of Liability | C. | $1,000,000 | D. | $1,000,000 |

5. **Deductible (Inclusive of Claims Expenses):**
   **5A.**  $ 500   **Each Claim**   **5B.**  $ 1,000   Aggregate

6. **Policy Premium:**   $714       State Taxes/Surcharges:

7. **Retroactive Date:**   February 22, 1998

8. **Notice to Company:**   Notice of a Claim or Potential Claim should be sent to:
   Hudson Insurance Group

   100 William Street, 5th Floor
   New York, NY 10038

   Fax: 646-216-3786
   Email: hudsonclaims360@hudsoninsgroup.com
   On weekends or holidays: **866-546-3981 (Toll Free)**

9. **A. Program Administrator:**   Riverton Insurance Agency Corp.
   **B. Agent/Broker:**   ALIA (Riverton Insurance Agency Corp.)

*IN WITNESS WHEREOF, We have caused this policy to be executed by our President and our Corporate Secretary at New York, New York*

President                         Secretary

| Borrower or Owner | MOSELY, CHARLES R | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 3005 NITA ST | | | | | | |
| City | HOUSTON | County | HARRIS | State | TX | Zip Code | 77051-2829 |
| Client | CHARLES R MOSELY | | | | | | |



Google Maps    3005 Nita St



Imagery ©2021 Houston-Galveston Area Council, Maxar Technologies, Texas General Land Office, U.S. Geological Survey, USDA Farm Service 200 ft
Agency, Map data ©2021



# 3005 Nita St
Building

            

Directions      Save      Nearby      Send to your      Share
                                        phone

   You visited on Wednesday

## PHOTOGRAPH ADDENDUM

| | |
|---|---|
| Borrower or Owner | MOSELY, CHARLES R |
| Property Address | 3005 NITA ST |
| City HOUSTON | County HARRIS | State TX | Zip Code 77051-2829 |
| Client | CHARLES R MOSELY |



**FRONT VIEW OF SUBJECT PROPERTY**



**REAR VIEW OF SUBJECT PROPERTY**



**STREET SCENE OF SUBJECT PROPERTY**

**PHOTOGRAPH ADDENDUM**

| | |
|---|---|
| Borrower or Owner | MOSELY, CHARLES R |
| Property Address | 3005 NITA ST |
| City HOUSTON | County HARRIS    State TX    Zip Code 77051-2829 |
| Client | CHARLES R MOSELY |



RIGHT VIEW          3005 NITA ST



LEFT VIEW           3005 NITA ST



REAR VIEW           3005 NITA ST

## PHOTOGRAPH ADDENDUM

| | |
|---|---|
| Borrower or Owner | MOSELY, CHARLES R |
| Property Address | 3005 NITA ST |
| City  HOUSTON | County  HARRIS     State  TX     Zip Code  77051-2829 |
| Client | CHARLES R MOSELY |



3005 NITA ST



3005 NITA ST



3005 NITA ST

# PHOTOGRAPH ADDENDUM

| | | | | | |
|---|---|---|---|---|---|
| Borrower or Owner | MOSELY, CHARLES R | | | | |
| Property Address | 3005 NITA ST | | | | |
| City HOUSTON | County HARRIS | State TX | Zip Code 77051-2829 |
| Client | CHARLES R MOSELY | | | | |



3005 NITA ST



3005 NITA ST



3005 NITA ST

## PHOTOGRAPH ADDENDUM

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower or Owner | MOSELY, CHARLES R | | | | | |
| Property Address | 3005 NITA ST | | | | | |
| City HOUSTON | | County HARRIS | | State TX | Zip Code | 77051-2829 |
| Client | CHARLES R MOSELY | | | | | |



### COMPARABLE #1

3126 SUNNYDALE DR
HOUSTON, TX 77051-4638

| | |
|---|---|
| PRICE | $36,050 |
| PRICE/SF | 33.82 |
| DATE | s01/20;c10/19 |
| AGE | 61 |
| ROOM COUNT | 6-3-1.0 |
| LIVING AREA | 1,066 |
| | |
| VALUE INDICATION | $30,700 |



### COMPARABLE #2

3031 GROTON DR
HOUSTON, TX 77051-4625

| | |
|---|---|
| PRICE | $45,000 |
| PRICE/SF | 35.74 |
| DATE | s08/19;c07/19 |
| AGE | 60 |
| ROOM COUNT | 6-3-1.0 |
| LIVING AREA | 1,259 |
| | |
| VALUE INDICATION | $41,700 |



### COMPARABLE #3

8601 AMADWE ST
HOUSTON, TX 77051-2609

| | |
|---|---|
| PRICE | $32,000 |
| PRICE/SF | 32.39 |
| DATE | s07/20;c07/20 |
| AGE | 70 |
| ROOM COUNT | 5-2-1.0 |
| LIVING AREA | 988 |
| | |
| VALUE INDICATION | $31,400 |

# PHOTOGRAPH ADDENDUM

| Borrower or Owner | MOSELY, CHARLES R | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 3005 NITA ST | | | | | | |
| City | HOUSTON | County | HARRIS | State | TX | Zip Code | 77051-2829 |
| Client | CHARLES R MOSELY | | | | | | |



## COMPARABLE #4

79
HOUSTON, TX 77051

| | |
|---|---|
| PRICE | $45,000 |
| PRICE/SF | 48.70 |
| DATE | s05/20;s05/20 |
| AGE | 79 |
| ROOM COUNT | 6-3-1.0 |
| LIVING AREA | 924 |
| VALUE INDICATION | $45,060 |

## COMPARABLE #5

| | |
|---|---|
| PRICE | $ |
| PRICE/SF | |
| DATE | |
| AGE | |
| ROOM COUNT | -- |
| LIVING AREA | |
| VALUE INDICATION | $ |

## COMPARABLE #6

| | |
|---|---|
| PRICE | $ |
| PRICE/SF | |
| DATE | |
| AGE | |
| ROOM COUNT | -- |
| LIVING AREA | |
| VALUE INDICATION | $ |

## Market Conditions Addendum to the Appraisal Report
File No. NITA090S

The purpose of this addendum is to provide the lender/client with a clear and accurate understanding of the market trends and conditions prevalent in the subject neighborhood. This is a required addendum for all appraisal reports with an effective date on or after April 1, 2009.

| | | |
|---|---|---|
| Property Address 3005 NITA ST | City HOUSTON | State TX  ZIP Code 77051-2829 |
| Borrower MOSELY, CHARLES R | | |

**Instructions:** The appraiser must use the information required on this form as the basis for his/her conclusions, and must provide support for those conclusions, regarding housing trends and overall market conditions as reported in the Neighborhood section of the appraisal report form. The appraiser must fill in all the information to the extent it is available and reliable and must provide analysis as indicated below. If any required data is unavailable or is considered unreliable, the appraiser must provide an explanation. It is recognized that not all data sources will be able to provide data for the shaded areas below; if it is available, however, the appraiser must include the data in the analysis. If data sources provide the required information as an average instead of the median, the appraiser should report the available figure and identify it as an average. Sales and listings must be properties that compete with the subject property, determined by applying the criteria that would be used by a prospective buyer of the subject property. The appraiser must explain any anomalies in the data, such as seasonal markets, new construction, foreclosures, etc.

### MARKET RESEARCH & ANALYSIS

| Inventory Analysis | Prior 7-12 Months | Prior 4-6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | 17 | 7 | N/A | ☐ Increasing | ☐ Stable | ☒ Declining |
| Absorption Rate (Total Sales/Months) | 2.83 | 2.33 | 0.00 | ☐ Increasing | ☐ Stable | ☒ Declining |
| Total # of Comparable Active Listings | 4 | 4 | 4 | ☐ Declining | ☒ Stable | ☐ Increasing |
| Months of Housing Supply (Total Listings/Ab.Rate) | 1.41 | 1.71 | 1.20 | ☐ Declining | ☒ Stable | ☐ Increasing |
| Median Sale & List Price, DOM, Sale/List % | Prior 7-12 Months | Prior 4-6 Months | Current – 3 Months | Overall Trend | | |
| Median Comparable Sale Price | 82,000 | 110,000 | N/A | ☒ Increasing | ☐ Stable | ☐ Declining |
| Median Comparable Sales Days on Market | 11 | 7 | N/A | ☒ Increasing | ☐ Stable | ☐ Declining |
| Median Comparable List Price | 130,000 | 130,000 | 130,000 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Median Comparable Listings Days on Market | 28 | 28 | 28 | ☐ Declining | ☒ Stable | ☐ Increasing |
| Median Sale Price as % of List Price | 99.00 | 99.00 | N/A | ☐ Increasing | ☒ Stable | ☐ Declining |
| Seller-(developer, builder, etc.) paid financial assistance prevalent? | | Yes | ☒ No | ☐ Declining | ☒ Stable | ☐ Increasing |

Explain in detail the seller concessions trends for the past 12 months (e.g., seller contributions increased from 3% to 5%, increasing use of buydowns, closing costs, condo fees, options, etc.).    FEW SELLERS CONCESSIONS NOTED IN THIS MARKET

Are foreclosure sales (REO sales) a factor in the market? ☒ Yes  ☐ No  If yes, explain (including the trends in listings and sales of foreclosed properties).
FORECLOSURES REPRESENT APPROXIMATELY 2% OF ALL SALES

Cite data sources for above information.    HMLS;HCAD

Summarize the above information as support for your conclusions in the Neighborhood section of the appraisal report form. If you used any additional information, such as an analysis of pending sales and/or expired and withdrawn listings, to formulate your conclusions, provide both an explanation and support for your conclusions.
AREA IS VIABLE HOWEVER THERE IS NOT ENOUGH DATA TO ESTABLISH A CREDIBLE TREND

### CONDO/CO-OP PROJECTS

If the subject is a unit in a condominium or cooperative project, complete the following:          Project Name:

| Subject Project Data | Prior 7-12 Months | Prior 4-6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Absorption Rate (Total Sales/Months) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Total # of Active Comparable Listings | | | | ☐ Declining | ☐ Stable | ☐ Increasing |
| Months of Unit Supply (Total Listings/Ab. Rate) | | | | ☐ Declining | ☐ Stable | ☐ Increasing |

Are foreclosure sales (REO sales) a factor in the project? ☐ Yes  ☐ No  If yes, indicate the number of REO listings and explain the trends in listings and sales of foreclosed properties.

Summarize the above trends and address the impact on the subject unit and project.

### APPRAISER

| | |
|---|---|
| Signature *Cheryl Jones* | Signature |
| Appraiser Name CHERYL JONES | Appraiser Name |
| Company Name JONES APPRAISAL SERVICE | Company Name |
| Company Address PO BOX 980723, HOUSTON, TX 77098 | Company Address |
| State License/Certification #1326601          State TX | State License/Certification #          State |
| Email Address cjonesappraisal@yahoo.com | Email Address |

# USPAP Compliance Addendum

File No.  NITA090S

| | |
|---|---|
| Borrower/Client | MOSELY, CHARLES R |
| Property Address | 3005 NITA ST |
| City HOUSTON | County HARRIS    State TX    Zip Code 77051-2829 |
| Lender | CHARLES R MOSELY |

**This report was prepared under the following USPAP reporting option:**

[X] **Appraisal Report**          This report was prepared in accordance with USPAP Standards Rule 2-2(a).

[ ] **Restricted Appraisal Report**     This report was prepared in accordance with USPAP Standards Rule 2-2(b).

**Reasonable Exposure Time**

My opinion of a reasonable exposure time for the subject property at the market value stated in this report is:  44

**Additional Certifications**

[X] I have **NOT** performed services, as an appraiser or in any other capacity, regarding the property that is the subject of the report within the three-year period immediately preceding acceptance of this assignment.

[ ] I **HAVE** performed services, as an appraiser or in another capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment. Those services are described in the comments below.

**Additional Comments**

| | | |
|---|---|---|
| Signature | Signature | |
| Name  CHERYL JONES | Name | |
| Date of Signature  04/06/2021 | Date of Signature | |
| State Certification #  1326601 | State Certification # | |
| or State License # | or State License # | |
| State  TX | State | |
| Expiration Date of Certification or License  02/28/2023 | Expiration Date of Certification or License | |
| Effective Date of Appraisal  04/02/2021 | Supervisory Appraiser Inspection of Subject Property: | |
| | [ ] Did Not  [ ] Exterior-only from Street | [ ] Interior and Exterior |

USPAP Compliance Addendum 2014                                   AI Ready

| Borrower | MOSELY, CHARLES R | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 3005 NITA ST | | | | | | |
| City | HOUSTON | County | HARRIS | | State | TX | Zip Code 77051-2829 |
| Lender/Client | CHARLES R MOSELY | | | Address | 3030 CHIMIRA LN, HOUSTON, TX 77051 | | |

## Requirements - Condition and Quality Ratings Usage

Appraisers must utilize the following standardized conditions and quality ratings within the appraisal report.

### Condition Ratings and Definitions

**C1** - The improvements have been very recently constructed and have not previously been occupied. The entire structure and all components are new and the dwelling features no physical depreciation.

*Note: Newly constructed improvements that feature recycled materials and/or components can be considered new dwellings provided that the dwelling is placed on a 100% new foundation and recycled materials and the recycled components have been rehabilitated/re-manufactured into like-new condition. Recently constructed improvements that have not been previously occupied are not considered "new" if they have significant physical depreciation (i.e., newly constructed dwellings that have been vacant for an extended period of time without adequate maintenance or upkeep).*

**C2** - The improvements feature no deferred maintenance, little or no physical depreciation, and require no repairs. Virtually all building components are new or have been recently repaired, refinished, or rehabilitated. All outdated components and finishes have been updated and/or replaced with components that meet current standards. Dwellings in this category either are almost new or have been recently completely renovated and are similar in condition to new construction.

*Note: The improvements represent a relatively new property that is well maintained with no deferred maintenance and little or no physical depreciation, or an older property that has been recently completely renovated.*

**C3** - The improvements are well maintained and feature limited physical depreciation due to normal wear and tear. some components, but not every major building component, may be updated or recently rehabilitated. The structure has been well maintained.

*Note: The improvement is in its first-cycle of replacing short-lived building components (appliances, floor coverings, HVAC, etc.) and is being well maintained. Its estimated effective age is less than its actual age. It also may reflect a property in which the majority of short-lived building components have been replaced but not to the level of a complete renovation.*

**C4** - The improvements feature some minor deferred maintenance and physical deterioration due to normal wear and tear. The dwelling has been adequately maintained and requires only minimal repairs to building components/mechanical systems and cosmetic repairs. All major building components have been adequately maintained and are functionally adequate.

*Note: The estimated effective age may be close to or equal to its actual age. It reflects a property in which some of the short-lived building components have been replaced, and some short-lived building components are at or near the end of their physical life expectancy; however, they still function adequately. Most minor repairs have been addressed on an ongoing basis resulting in an adequately maintained property*

**C5** - The improvements feature obvious deferred maintenance and are in need of some significant repairs. Some building components need repairs, rehabilitation, or updating. The functional utility and overall livability is somewhat diminished due to condition, but the dwelling remains useable and functional as a residence.

*Note: Some significant repairs are needed to the improvements due to the lack of adequate maintenance. It reflects a property in which many of its short-lived building components are at the end of or have exceeded their physical life expectancy but remain functional.*

**C6** - The improvements have substantial damage or deferred maintenance with deficiencies or defects that are severe enough to affect the safety, soundness, or structural integrity of the improvements. The improvements are in need of substantial repairs and rehabilitation, including many or most major components.

*Note: Substantial repairs are needed to the improvements due to the lack of adequate maintenance or property damage. It reflects a property with conditions severe enough to affect the safety, soundness, or structural integrity of the improvements.*

### Quality Ratings and Definitions

**Q1** - Dwellings with this quality rating are usually unique structures that are individually designed by an architect for a specified use. Such residences typically are constructed from detailed architectural plans and specifications and feature an exceptionally high level of workmanship and exceptionally high-grade materials throughout the interior and exterior of the structure. The design features exceptionally high-quality exterior refinements and ornamentation, and exceptionally high-quality interior refinements. The workmanship, materials, and finishes throughout the dwelling are exceptionally high quality.

**Q2** - Dwellings with this quality rating are often custom designed for construction on an individual property owner's site. However, dwellings in this quality grade are also found in high-quality tract developments featuring residences constructed from individual plans or from highly modified or upgraded plans. The design features detailed high-quality exterior ornamentation, high-quality interior refinements, and detail. The workmanship, materials, and finishes throughout the dwelling are of exceptionally high quality.

**Q3** - Dwellings with this quality rating are residences of higher quality built from individual or readily available designer plans in above-standard residential tract developments or on an individual property owner's site. The design includes significant exterior ornamentation and interiors that are well finished. The workmanship exceeds acceptable standards and many materials and finishes throughout the dwelling have been upgraded from "stock" standards.

**Q4** - Dwellings with this quality rating meet or exceed the requirements of applicable building codes. Standard or modified standard building plans are utilized and the design includes adequate fenestration and some exterior ornamentation and interior refinements. Materials, workmanship, finish, and equipment are of stock or builder grade and may feature some upgrades.

**Q5** - Dwellings with this quality rating feature economy of construction and basic functionality as main considerations. Such dwellings feature a plain design using readily available or basic floor plans featuring minimal fenestration and basic finishes with minimal exterior ornamentation and limited interior detail. These dwellings meet minimum building codes and are constructed with inexpensive, stock materials with limited refinements and upgrades.

**Q6** - Dwellings with this quality rating are of basic quality and lower cost; some may not be suitable for year-round occupancy. Such dwellings are often built with simple plans or without plans, often utilizing the lowest quality building materials. Such dwellings are often built or expanded by persons who are professionally unskilled or possess only minimal construction skills. Electrical, plumbing, and other mechanical systems and equipment may be minimal or non-existent. Older dwellings may feature one or more substandard non-conforming additions to the original structure.

### Definitions of Not Updated, Updated, and Remodeled

**Not Updated** - Little or no updating or modernization. This description includes, but is not limited to, new homes. Residential properties of fifteen years of age or less often reflect an original condition with no updating, if no major components have been replaced or updated. Those over fifteen years of age are also considered not updated if the appliances, fixtures, and finishes are predominantly dated. An area that is 'Not Updated' may still be well maintained and fully functional, and this rating does not necessarily imply deferred maintenance or physical/functional deterioration.

**Updated** - The area of the home has been modified to meet current market expectations. These modifications are limited in terms of both scope and cost. An updated area of the home should have an improved look and feel, or functional utility. Changes that constitute updates include refurbishment and/or replacing components to meet existing market expectations. Updates do not include significant alterations to the existing structure.

**Remodeled** - Significant finish and/or structural changes have been made that increase utility and appeal through complete replacement and/or expansion. A remodeled area reflects fundamental changes that include multiple alterations. These alterations may include some or all of the following: replacement of a major component (cabinet(s), bathtub, or bathroom tile), relocation of plumbing/gas fixtures/appliances, significant structural alterations (relocating walls, and/or the addition of square footage). This would include a complete gutting and rebuild.

### Explanation of Bathroom Count

Three-quarter baths are counted as a full bath in all cases. Quarter baths (baths that feature only a toilet) are not included in the bathroom count. The number of full and half baths is reported by separating the two values using a period, where the full bath count is represented to the left of the period and the half bath count is represented to the right of the period.

Example: 3.2 indicates three full baths and two half baths.

| Abbreviation | Full Name | Appropriate Fields |
|---|---|---|
| A | Adverse | Location & View |
| ac | Acres | Area, Site |
| AdjPrk | Adjacent to Park | Location |
| AdjPwr | Adjacent to Power Lines | Location |
| ArmLth | Arms Length Sale | Sale or Financing Concessions |
| AT | Attached Structure | Design (Style) |
| B | Beneficial | Location & View |
| ba | Bathroom(s) | Basement & Finished Rooms Below Grade |
| br | Bedroom | Basement & Finished Rooms Below Grade |
| BsyRd | Busy Road | Location |
| c | Contracted Date | Date of Sale/Time |
| Cash | Cash | Sale or Financing Concessions |
| Comm | Commercial Influence | Location |
| Conv | Conventional | Sale or Financing Concessions |
| cp | Carport | Garage/Carport |
| CrtOrd | Court Ordered Sale | Sale or Financing Concession |
| CtySky | City View Skyline View | View |
| CtyStr | City Street View | View |
| cv | Covered | Garage/Carport |
| DOM | Days On Market | Data Sources |
| DT | Detached Structure | Design (style) |
| dw | Driveway | Garage/Carport |
| e | Expiration Date | Date of Sale/Time |
| Estate | Estate Sale | Sale or Financing Concessions |
| FHA | Federal Housing Administration | Sale or Financing Concessions |
| G | Garage | Garage/Carport |
| ga | Attached Garage | Garage/Carport |
| gbi | Built-in Garage | Garage/Carport |
| gd | Detached Garage | Garage/Carport |
| GlfCse | Golf Course | Location |
| Glfvw | Golf Course View | View |
| GR | Garden | Design (Style) |
| HR | High Rise | Design (Style) |
| In | Interior Only Stairs | Basement & Finished Rooms Below Grade |
| Ind | Industrial | Location & View |
| Listing | Listing | Sale or Financing Concessions |
| Lndfil | Landfill | Location |
| LtdSght | Limited Sight | View |
| MR | Mid Rise | Design (Style) |
| Mtn | Mountain View | View |
| N | Neutral | Location & View |
| NonArm | Non-Arms Length Sale | Sale or Financing Concessions |
| o | Other | Basement & Finished Rooms Below Grade |
| O | Other | Design (Style) |
| op | Open | Garage/Carport |
| Prk | Park View | View |
| Pstrl | Pastoral View | View |
| PubTrn | Public Transportation | Location |
| PwrLn | Power Lines | View |
| Relo | Relocation Sale | Sale or Financing Concessions |
| REO | REO Sale | Sale or Financing Concessions |
| Res | Residential | Location & View |
| RH | USDA - Rural Housing | Sale or Financing Concessions |
| rr | Recreational (Rec) Room | Basement & Finished Rooms Below Grade |
| s | Settlement Date | Date of Sale/Time |
| sf | Square Feet | Area, Site, Basement |
| Short | Short Sale | Sale or Financing Concessions |
| Unk | Unknown | Date of Sale/Time |
| VA | Veterans Administration | Sale or Financing Concessions |
| w | Withdraw Date | Date of Sale/Time |
| wo | Walk Out Basement | Basement & Finished Rooms Below Grade |
| Woods | Woods View | View |
| Wtr | Water View | View |
| WtrFr | Water Frontage | Location |
| wu | Walk Up Basement | Basement & Finished Rooms Below Grade |

JONES APPRAISAL SERVICE

File No.    NITA090S

## Other Appraiser-Defined Abbreviations

| Abbreviation | Full Name | Fields Where This Abbreviation May Appear |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

JONES APPRAISAL SERVICE

# EXHIBIT 3

# Home Inspection Report

## 3005 Nita Street, Houston, TX 77051

**Inspection Date:**
Monday, May 10, 2021

**Prepared For:**
Chuck Mosely

**Prepared By:**
Landalysis Information Services
1541 Moritz Drive
Suite 113
Houston, TX 77055

Phone: 713-515-5189
Fax:
Email: Landalysis@gmail.com

**Report Number:**
05102021-1000A

**Inspector:**
John Landram

# Structure

## DESCRIPTION

**Foundation:** Slab
**Grading and Drainage:** Poor

## OBSERVATIONS

• See cracks in slab wall.



• The soil line is too high on all sides of the structure. Under current building standards there should be at least 4-inches of foundation visible below masonry veneer and 6-inches of foundation visible below wood type veneer.



• Erosion or ponding next to foundation / driveway. Spaulding of slab observed..

3005 Nita Street, Houston, TX 77051                                    Page 2 of 10




**Foundation is not performing adequately**
In my opinion, the foundation appears not to be providing adequate support. Signs of structural movement noted, sloped or uneven floors; cracks in the exterior foundation, interior or exterior walls, molding, or interior tiles/flooring; difficult to open or close windows and doors; or sagging roof.  suggest that an expert in the field be consulted for further evaluation of the structure and to provide suggestions as to what, if any, corrective action should be taken.

**Note:** *Weather conditions, drainage, leakage, and other adverse factors are able to effect structures, and differential movements are likely to occur.  The inspectors opinion is based on visual observations of accessible and unobstructed areas of the structure at the time of the inspection.  Future performance of the structure cannot be predicted or warranted.*

## STRUCTURE INSPECTION LIMITATIONS

This is a visual inspection limited in scope by (but not restricted to) the following conditions:
- ❖ Structural components concealed behind finished surfaces could not be inspected.
- ❖ Only a representative sampling of visible structural components were inspected.
- ❖ Furniture and/or storage restricted access to some structural components.
- ❖ Engineering or architectural services such as calculation of structural capacities, adequacy, or integrity are not part of a home inspection.

3005 Nita Street, Houston, TX 77051                                    Page 3 of 10

# Roofing

## DESCRIPTION

**Roof Covering:** New asphalt roof.

## OBSERVATIONS

- Shows evidence of sagging at ridge.
- Roof decking deflection and/or sagging.



**Notice:** *Life expectancy of the roofing material is not covered by this property inspection report. If any concerns exist about the roof covering life expectancy or potential for future problems, a roofing specialist should be consulted. The inspector cannot offer an opinion or warranty as to whether the roof has leaked in the past, leaks now, or may be subjected to future leaks, either expressed or implied. The inspection of this roof may show it to be functioning as intended or in need of minor repairs. The inspection does not determine the insurability of the roof. You are strongly encouraged to have your insurance company physically inspect the roof, prior to any time limitations such as option or warranty periods, to fully evaluate the insurability of the roof.*

## ROOFING INSPECTION LIMITATIONS

This is a visual inspection limited in scope by (but not restricted to) the following conditions:
❖   Not all of the underside of the roof sheathing is inspected for evidence of leaks.

3005 Nita Street, Houston, TX 77051                                    Page 4 of 10

- ❖ Evidence of prior leaks may be disguised by interior finishes.
- ❖ Estimates of remaining roof life are approximations only and do not preclude the possibility of leakage. Leakage can develop at any time and may depend on rain intensity, wind direction, ice build up, and other factors.
- ❖ Antennae, chimney/flue interiors which are not readily accessible are not inspected and could require repair.
- ❖ Roof inspection may be limited by access, condition, weather, or other safety concerns.

© 2010, Whisper Computer Solutions, Inc.

3005 Nita Street, Houston, TX 77051                                    Page 5 of 10

# Exterior

## DESCRIPTION

**Exterior Siding:** Wood veneer
**Windows:** Wood Frame
**Doors:** Wood

## OBSERVATIONS

• Window frame separating from siding at right front window.



• Missing drip flashing above some windows.
• Wood siding and penetrations need to be caulked to prevent water intrusion.

 

## EXTERIOR INSPECTION LIMITATIONS

This is a visual inspection limited in scope by (but not restricted to) the following conditions:

❖ A representative sample of exterior components was inspected rather than every occurrence of components.

❖ The inspection does not include an assessment of geological, geotechnical, or hydrological conditions, or environmental hazards.

❖ Screening, shutters, awnings, or similar seasonal accessories, fences, recreational facilities, outbuildings, seawalls, breakwalls, docks, erosion control and earth stabilization measures are not inspected unless specifically agreed-upon and documented in this report.

© 2010, Whisper Computer Solutions, Inc.

3005 Nita Street, Houston, TX 77051                                   Page 7 of 10

# Electrical

## DESCRIPTION

**Electrical:** Electricity turned off.

## OBSERVATIONS

- Observed new meter housing, panel box and masthead.

 

- Observed electrical cords being used as wiring.



## ELECTRICAL INSPECTION LIMITATIONS

This is a visual inspection limited in scope by (but not restricted to) the following conditions:
- ❖ Electrical components concealed behind finished surfaces are not inspected.
- ❖ Only a representative sampling of outlets and light fixtures were tested.
- ❖ Furniture and/or storage restricted access to some electrical components which may not be inspected.
- ❖ The inspection does not include remote control devices, alarm systems and components, low voltage wiring, systems, and components, ancillary wiring, systems, and other components which are not part of the primary electrical power distribution system.

# Plumbing

## DESCRIPTION

**Water Supply System:** Water turned off.

## OBSERVATIONS

• Shut off valve is buried.



## PLUMBING INSPECTION LIMITATIONS

This is a visual inspection limited in scope by (but not restricted to) the following conditions:

❖ Portions of the plumbing system concealed by finishes and/or storage (below sinks, etc.), below the structure, or beneath the ground surface are not inspected.
❖ Water quantity and water quality are not tested unless explicitly contracted-for and discussed in this or a separate report.
❖ Clothes washing machine connections are not inspected.
❖ Interiors of flues or chimneys which are not readily accessible are not inspected.
❖ Water conditioning systems, solar water heaters, fire and lawn sprinkler systems, and private waste disposal systems are not inspected unless explicitly contracted-for and discussed in this or a separate report.
❖ An inspection of the sewage system is outside the scope of this inspection.

# Interior

## DESCRIPTION

**Walls, Floor, Ceiling, Attic Area**

## OBSERVATIONS

- Floor out of level and or excessive depressions observed.
- Interior walls and ceiling removed to studs.



## INTERIOR INSPECTION LIMITATIONS

This is a visual inspection limited in scope by (but not restricted to) the following conditions:

❖ Furniture, storage, appliances and/or wall hangings are not moved to permit inspection and may block defects.

❖ Carpeting, window treatments, central vacuum systems, household appliances, recreational facilities, paint, wallpaper and other finish treatments are not inspected.

© 2010, Whisper Computer Solutions, Inc.

# EXHIBIT 4

**Shellpoint**
Mortgage Servicing



P.O. BOX 51850
LIVONIA MI 48151-5850
RETURN SERVICE REQUESTED

**Phone Number:** 866-825-2174
**Fax:** 866-467-1187
**Email:** Lossmitigation@shellpointmtg.com
**Mon - Thurs:** 8:00AM-10:00PM
**Fri:** 8:00AM-10:00PM

S-SFRECS20 L-1035 R-205
FDFXBF00304407 - 650300735 I13176
CHARLES RAY MOSELY
3005 NITA ST
HOUSTON TX 77051-4139

| Loan Number: | 0567249301 |
|---|---|
| Principal Balance: | $28,480.95 |
| Property: | 3005 Nita |
| | Houston, TX 77051 |

01/15/2021

Dear Charles Ray Mosely:

Shellpoint Mortgage Servicing ("Shellpoint") recently offered you a modification for the above referenced loan. Two copies of the Loan Modification Agreement were sent to you on 12/16/2020 for your signature. Additionally, a follow up letter was sent to you as a reminder that the signed modification agreements had not been received. To date, we still have not received the signed agreements.

Shellpoint cannot proceed with the loan modification until we receive both signed copies of the agreements. If the agreement has notary provisions at the end, you must sign both copies before a notary public and return the notarized copies to us. We encourage you to make a copy of all documents for your records.

Please mail the required documents to the following address by 1/30/2021. If the required documents are not received by this date, the modification may be denied.

Shellpoint Mortgage Servicing
P.O. Box 10826
Greenville, SC 29603-0826

If you are unable to send both signed copies of the Loan Modification Agreement by 1/30/2021, you must contact our Loss Mitigation Department at 866-825-2174 or visit our website at www.shellpointmtg.com for more information.

Sincerely,

Loss Mitigation Department
Shellpoint Mortgage Servicing

**SEE REVERSE SIDE OR ATTACHED FOR AN IMPORTANT STATEMENT OF YOUR RIGHTS.**

# EXHIBIT 5

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

United States Courts
Southern District of Texas
**FILED**

**NOV 02 2020**

IN RE: Charles Ray Mosely

**CASE NO. 20-32827-H3-13**
**CHAPTER 13**

David J. Bradley, Clerk of Court

:

**DEBTOR**

**MOTION FOR VOLUNTARY DISMISSAL**

Comes now debtor, Charles Ray Mosely and respectfully asks the Court to voluntarily dismiss this case. See 11 U.S.C. Section 1307(b).

Debtor has made no arrangements or agreements with any creditor or other person in connection with this request for dismissal.

Debtor seeks dismissal of this for the following: On May 29, 2020 debtor filed Chapter 7 bankruptcy to clear the pathway for credit improvement, to refinance home with another lender and to challenge debt collectors on disputed claims. Debtor obtained the representation of an attorney. Debtor subsequently filed Chapter 13 bankruptcy to save home and other exemptions.

Debtor, expressed his issues and concerns with the mortgagee claim. From the initial consultation to the release of counsel, the matter was raised. Failure to object to the proof of claim means debtor agrees. The proposed payment plan was arduous.

Debtor, Charles Mosely, feels it is in his best interest to pursue this matter in State or Federal court. For the record debtor has filed complaint with the Consumer Financial Protection Bureau.

Respectfully submitted,

Pro Se Debtor
3005 Nita Street
Houston, Texas 777051
830-522-5836

# EXHIBIT 6

Primary Menu

January 30, 2022

Primary Menu

# Shellpoint Again Tops Monthly CFPB Complaints

Posted on June 9, 2020 by TMN Editor



For the second straight month, Shellpoint Partners racked up the highest number of mortgage-related consumer complaints to the Consumer Financial Protection Bureau, according to publicly available data on the federal agency's website.

In April, 159 people filed complaints against Shellpoint citing various issues; another 101 people filed complaints in May. Wells Fargo had the second most complaints in May at 82, followed by Freedom Mortgage Company (66), Ocwen Financial Corporation (66) and Nationstar Mortgage (64).

Shellpoint Partners could not be reached for comment. In 2018, Shellpoint was acquired by New Residential Investment Corp. in a $190 million deal. Shellpoint is the parent company for several subsidiaries, including Shellpoint Mortgage Servicing and mortgage lender New Penn Financial.

## MOST READ ARTICLES



**Higher Interest Rates Are on the Way. Will They Drive Down Mortgage Biz?**



**Victims Of Mortgage Ponzi Scheme Can Seek Compensation**



**Finding A Mortgage On Your Phone? FinTech Companies Catering To Those Customers**

## Sign up!

Get news from The Mortgage Note in your inbox.

**\* Email**

By submitting this form, you are consenting to receive news stories from: The Mortgage Note, 199 New Road, Northfield, NJ, 08225, US, https://www.themortgageno te.org. You can revoke your consent to receive emails at any time by using the

_Link to database_

The majority of complaints are classified either as "trouble during payment process" or "struggling to pay mortgage.

A homeowner in North Carolina wrote that applied for a forbearance due to the global pandemic but was initially told that the company would add a balloon payment at the end of three months instead of adding the missed payments to the end of the loan.

"And NewRez stated we cannot add the missed payments to the end of the loan," the homeowner wrote. "We were lied to and completely mislead. ... We do not want a loan modification. We want our payments put on the back end of our loan. That's not hard to do and NewRez/Shellpoint mortgage is being difficult and misleading many consumers."

Another homeowner in Virginia wrote that the company incorrectly reported the mortgage "as in forbearance to all relevant credit agencies."

Despite asking Shellpoint to correct this with the agencies, the homeowner said they have spent more than five hours "arguing with customs service reps and supervisors who tell me they have no access to email, put me on hold for countless amounts of time, send me to voicemail boxes that lead me to a dead end, explain to me what their system CAN NOT do. It is an abomination. I have paid my mortgage – hundreds of thousands of dollars – on time every month for over 17 years."

For all but a handful of listed complaints, the database notes that Shellpoint Partners' public response was, "Company believes it acted appropriately as authorized by contract or law."

A homeowner in Ohio was surprised to receive a letter from Shellpoint stating they owe $2,600 for bankruptcy legal fees.

"We have not filed for bankruptcy," the homeowner wrote.

Another homeowner in Texas also expressed surprise upon learning that, after their loan was sold to Shellpoint and then transferred to NewRez, that their payment was increased for outstanding property taxes.

"I am 100 percent exempt from property tax," the homeowner wrote.

A homeowner in Missouri write that they were "reluctantly submitting this complaint after making a good-faith effort to resolve this issue," noting that Shellpoint became their mortgage servicer after refinancing. The new terms call for escrow for taxes and insurance, which is where the homeowners wrote they "have run into trouble with Shellpoint."

SafeUnsubscribe® link, found at the bottom of every email. Emails are serviced by Constant Contact.

The complaint explains that the insurance company did not receive a payment, but Shellpoint "reassured" them that it had been resolved. Despite that reassurance, the insurance company told the homeowner that it attempted to work with Shellpoint to no avail, according to the complaint. At the time the complaint was filed, the homeowner had been struggling to resolve the issue for seven weeks and wrote, "[M]y policy is severely overdue for payment and a cancellation notice will likely be sent out in the near future."

Shellpoint's public response as noted in the database was, "Company believes it acted appropriately as authorized by contract or law."

**Complains to the Consumer Financial Protection Bureau**

**By Company**

- Shellpoint Partners LLC: 101
- Wells Fargo: 82
- Freedom Mortgage Company: 66
- Ocwen Financial Corporation: 66
- Nationstar Mortgage: 64
- Specialized Loan Servicing Holdings: 47
- LoanCare LLC: 43
- JPMorgan Chase: 42
- Select Portfolio Servicing: 40
- Quicken: 31

**By State**

- California: 183
- Florida: 123
- Texas: 82
- Georgia: 49
- New York: 45

**Tweets** by
@TheMortgageNote

 **The Mortgage Note**
@TheMortgageNote

Rates Settle Down After Weeks Of Increasesthemortgagenote.org/rates-flatten-...

**Rates Settle Down Aft...**
Mortgage rates flattene...
themortgagenote.org

Jan 28, 2022

 **The Mortgage Note**
@TheMortgageNote

Forbearances Rise Againthemortgagenote.org/forbearances-r...

**Forbearances Rise Ag...**
New forbearance plans ...
themortgagenote.org

Jan 28, 2022

Embed    View on Twitter

**Related Posts**

 Morning Roundup (12/09/2021)– CFPB Calls Out Lending Violations, Millennials At Risk

 CFPB Singles Out Mortgage-Related Violations In New Report